IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICHARD CHAMBERS
INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY
SITUATED,

     Plaintiff,

v.

SEARS, ROEBUCK AND CO.,

     Defendant.

Civil Action No. 4:08-cv-03676

Judge Honorable Nancy F. Atlas

STEVEN WERCHAN,

     Plaintiff,

v.

SEARS, ROEBUCK AND CO., and A&E
FACTORY SERVICE, LLC,

     Defendants.

Civil Action No.

**SEARS, ROEBUCK AND CO.'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF WERCHAN'S CLAIMS AND MEMORANDUM OF LAW IN
SUPPORT THEREOF**

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF CASE ............................................................................... 1

II.    STATEMENT OF ISSUES/SUMMARY OF ARGUMENT AND
STANDARD OF REVIEW ....................................................................... 2

     A.    Issue for Review/Summary of Argument ...................................... 2

     B.    Standard of Review ........................................................................ 2

III.    STATEMENT OF UNDISPUTED FACTS ............................................... 3

     A.    Home Dispatch Program ............................................................... 3

         1.    Receipt of Route Assignment.............................................. 4

         2.    Morning Commute .............................................................. 7

         3.    Running the Service Route................................................... 7

         4.    End-of-Route Activities and Evening Commute ................. 7

         5.    Other Incidental Activities under the HDP ......................... 8

         6.    Timekeeping Entries and Pay Practices under the HDP ..... 9

         7.    Lack of Supervisory Oversight ......................................... 10

IV.    ARGUMENT ........................................................................................... 11

     A.    Plaintiff Werchan's Commute and Activities Incidental to the Use of
the Company Van are Non-Compensable as a Matter of Law.................. 11

         1.    Sears' HDP Complies with the ECFA ............................. 11

             a.    Werchan's Uncompensated Commute is Appropriately
Limited to a Normal Commute Time................................... 13

             b.    Werchan Agreed to Participate in the HDP ........................ 14

         2.    The Incidental Activities Required under the Home Dispatch
Program Are Also Non-Compensable under the ECFA ................. 16

         3.    HDP-Required Activities Are Non-Compensable as
"Preliminary" and "Postliminary" Activities ................................. 19

         4.    The Incidental Activities Required under the HDP Are *De
Minimis* and Not Compensable ....................................................... 20

         5.    Werchan Is Not Entitled to Compensation for Any
Unauthorized "Off-the-Clock" Activities He May Have
Performed ........................................................................................ 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

V.     CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. United States*,
  65 Fed. Cl. 217 (Fed. Cl. 2005) ............................................................................. 14, 15

*Aiken v. City of Memphis*,
  985 F. Supp. 740 (W.D. Tenn. 1997), *aff'd*, 190 F.3d 753 (6th Cir. 1999) ..... 18, 21, 23

*American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*,
  343 F.3d 401 (5th Cir. 2003) ......................................................................................... 3

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ...................................................................................................... 20

*Anderson v. Pilgrim's Pride Co.*,
  147 F. Supp 2d 556 (E.D. Tex. 2001),
  *overruled on other grounds by IBP, Inc. v. Alvarez*, 546 U.S. 21 (2006) .............. 20, 21

*Baker v. GTE North, Inc.*,
  110 F.3d 28 (7th Cir. 1997) ............................................................................... 12, 13, 18

*Bartholomew v. City of Burlington, Kansas*,
  5 F. Supp. 2d 1161 (D. Kan. 1998) ....................................................................... 14, 15

*Barvinchak v. Indiana Regional Medical Center*,
  No. 3:2006-69, 2007 WL 2903911 (W.D. Pa. Sept. 28, 2007) ................................... 24

*Bonilla v. Baker Concrete Construction, Inc.*,
  487 F.3d 1340 (11th Cir. 2007) ................................................................................... 20

*Buzek v. Pepsi Bottling Group, Inc.*,
  501 F. Supp. 2d 876 (S.D. Tex. 2007) ....................................................... 12, 17, 18, 24

*Caiarelli et al. v. Sears, Roebuck and Co. et al.*,
  No. 885 WD 2008 (Pa. Super. Ct. Sept. 21, 2009) ....................................................... 1

*Contini v. United Trophy Manufacturing, Inc.*,
  No. 6:06-CV-432-Orl.-18UAM, 2007 WL 1696030 (M.D. Fla. June 12, 2007) ......... 22

*Doyle v. BellSouth Communications Systems, Inc.*,
  No. 94-2978-D, 1996 U.S. Dist. LEXIS 18874
  (W.D. Tenn. Dec. 3, 1996) ............................................................................... 13, 18, 19

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ......................................................................................................... 2

## TABLE OF AUTHORITIES
### (continued)

Page

*Hellmers v. Town of Vestal, New York*,
    969 F. Supp. 837 (N.D.N.Y. 1997) ............................................................... 12

*IBI, Inc. v. United States*,
    11 Cl. Ct. 588 (1987) .................................................................................. 20

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005) ................................................................................ 19, 20

*Johnson v. RGIS Inventory Specialists*,
    554 F. Supp. 2d 693 (E.D. Tex. 2007) ......................................................... 12

*Kavanagh v. Grand Union Co.*, *Inc.*,
    192 F.3d 269 (2d Cir. 1999) .................................................................. 12, 13

*Keubel v. Black & Decker*,
    No. 08-CV-6020, 2009 WL 1401694 (W.D.N.Y. May 18, 2009) ................ 20

*Lindow v. United States*,
    738 F.2d 1057 (9th Cir. 1984) ......................................................... 20, 21, 23

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ........................................................................ 3

*Lujan v. National Wildlife Federation*,
    497 U.S. 871 (1990) ..................................................................................... 3

*Manners v. State*,
    703 N.Y.S.2d 375 (N.Y. Ct. Cl. 2000) ....................................................... 12

*Reich v. IBP, Inc.*,
    38 F.3d 1123 (10th Cir. 1994) ..................................................................... 20

*Reich v. New York City Transit Authority*,
    45 F.3d 646 (2d Cir. 1995) .................................................................. 12, 21, 24

*Riggs v. United States*,
    21 Cl. Ct. 664 (1990) .................................................................................. 20

*Rutti v. Lojack Corp.*,
    578 F.3d 1084 (9th Cir. 2009) ......................................................... 13, 15, 18

*Singh v. City of New York*,
    418 F. Supp. 2d 390 (S.D.N.Y. 2005), *aff'd*, 524 F.3d 361 (2d Cir. 2008) ...... 14, 22, 24

*Smith v. Aztec Well Servicing Co.*,
    462 F.3d 1274 (10th Cir. 2006) ................................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Page

*Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*,
    290 F.3d 303 (5th Cir. 2002) ................................................................ 2

*United Transportation Union Local 1745 v. City of Albuquerque*,
    178 F.3d 1109 (10th Cir. 1999) ........................................................... 12

*Vega v. Gasper*,
    36 F.3d 417 (5th Cir. 1994) ................................................................ 14

*Wren v. RGIS Inventory Specialists*,
    No. C-06-05778JCS, 2009 WL 2612307 (N.D. Cal. Aug. 24, 2009) .......................... 12

## STATUTES

29 U.S.C. § 254(a) ...................................................................... 12, 13, 19

29 U.S.C. § 254(a)(1) ....................................................................... 11

29 U.S.C. § 254(a)(2) ................................................................... 11, 19

29 C.F.R. § 785.35 ..................................................................... 11, 13

29 C.F.R. § 790.7(a) ........................................................................ 19

29 C.F.R. § 790.8(c) ........................................................................ 19

## OTHER AUTHORITIES

H.R. REPORT NO. 104-585 ........................................................ 15, 17, 18, 24

U.S. DOL Op. Letter,
    FLSA No. 2106, 1999 DOL WH LEXIS 9 (1999) ................................................ 13, 19

## RULES

FED. R. CIV. P. 56(c) ........................................................................ 2

I.      STATEMENT OF CASE

Sears maintains a workforce of in-home service technicians to service and repair Sears appliances in customers' homes.  Sears provides technicians a company-owned van to make service calls.  In addition, Sears offers technicians, under its Home Dispatch Program ("HDP"), the option of also using their service vans to commute from home to the first service call of the day and then home from the last service call.

On December 16, 2008, Plaintiff Steven Werchan, a former Sears in-home service technician in the San Antonio, Texas District, filed a lawsuit against Sears in the United States District Court for the Western District of Texas asserting violations of the Fair Labor Standards Act ("FLSA").   Specifically, Werchan seeks to recover overtime compensation allegedly due him, as well as liquidated damages, for: (1) the unpaid portions of his morning and evening commutes in a Sears van under the terms of the HDP; (2) time spent on activities incidental to the use of the van for commuting that took place before or after the paid workday; and (3) time allegedly spent performing work "off the clock" at Sears' direction.  (*Werchan* Compl. ¶¶ 7-10, 22.)[1]

On March 9, 2009, the United States District Court for the Western District of Texas, Austin Division transferred Werchan's case to this Court for potential consolidation with a lawsuit filed by Richard Chambers, a former Sears in-home service

---

[1] In *Caiarelli et al. v. Sears, Roebuck and Co. et al.*, No. 885 WD 2008 (Pa. Super. Ct. Sept. 21, 2009), the Superior Court of Pennsylvania recently found these same claims brought by Sears technicians in Pennsylvania to be meritless under the Pennsylvania Minimum Wage Act.  The Superior Court's September 21, 2009 Memorandum Opinion and Order, as well as all affidavits, deposition transcripts and exhibits thereto, and other materials cited herein are contained in Sears' separately filed Appendix.

- 1 -

technician in the Houston, Texas District that raised substantially similar claims. (*Werchan* Docket No. 11.)   Plaintiffs Werchan's and Chambers' lawsuits were consolidated before this Court.   Discovery is completed, and the cases are now set for briefing on cross-motions for summary judgment and/or certification of a collective action.   Sears hereby moves for summary judgment on all Werchan's claims.[2]

## II.   STATEMENT   OF   ISSUES/SUMMARY   OF   ARGUMENT   AND STANDARD OF REVIEW

### A.   Issue for Review/Summary of Argument

Sears seeks summary judgment on all of Werchan's claims under the FLSA because, as a matter of law, the time he spent commuting in a Sears van to the first customer call of the day and home from the last customer call of the day, and all incidental activities related to use of the van for commuting, is non-compensable under the FLSA.

### B.   Standard of Review

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c).   Only material disputes, *i.e.*, outcome determinative under the governing law, are sufficient to foreclose summary judgment.   *Terrebonne Parish School Board v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002); *Edwards v. Aguillard*, 482 U.S. 578, 595-96 (1987).

---

[2]  Sears has separately filed a motion for summary judgment on Plaintiff Chambers' claims.

To defeat summary judgment, the nonmoving party must go beyond the pleadings and present specific facts that show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)).

## III.    STATEMENT OF UNDISPUTED FACTS

### A.    <u>Home Dispatch Program</u>

As above stated, Sears maintains a voluntary Home Dispatch Program (the "HDP") for its technicians.  (Torre Dep. 29:14-21.)  Those who participate in the HDP use Sears vans to commute from their homes to the first customer in the morning and to return home from the final customer in the evening.  They park the van at home overnight.  (Torre Dep. 45:4-13; Cartia Aff. ¶ 4, Ex. A SW637-38.)  Sears pays for all commuting expenses associated with the van, including gas, maintenance and insurance. (Cartia Aff. ¶ 4, Ex. A SW637.)

Participation in the HDP is subject to the instructions and procedures set out in a manual currently entitled the SST Help System Manual.  (Cartia Aff. ¶ 5; Werchan Dep. 27:11-29:9, Dep. Ex. 3.)  This manual is available to technicians on the SST, and they are instructed to familiarize themselves with and follow the instructions set out in the manual.  (Cartia Aff. ¶ 5.)  Werchan acknowledges this.  (Werchan Dep. 27:11-29:4.)

Participating technicians are not paid for the first 35 minutes of their morning and evening commutes.  Technicians are compensated for all commute time in excess of 35 minutes.  (Torre Dep. 41:13-15, 43:7-44:7; Cartia Aff. ¶ 6, Ex. A SW637-39; Werchan Dep. 58:16-25.)

Technicians who elect not to participate in the HDP also use a Sears-owned van to make their service calls during the workday.  However, they park the van overnight at an assigned reporting office or alternate location.  They commute to and from their homes to the assigned parking location by private means to pick up the Sears van and then proceed in the van to the first customer.  These technicians are not paid for their commutes between home and the parking location.  They start to be paid when they arrive at the parking location to pick up the van.  (Torre Dep. 46:8-47:1; Cartia Aff. ¶ 7, Ex. A SW638.)

### 1.    Receipt of Route Assignment

All technicians are provided a laptop computer, called an "SST."  (Cartia Aff. ¶ 11, Ex. A SW633; Werchan Dep. 37:9-16.)  Technicians' daily assignments are transmitted electronically overnight from Sears' mainframe computer to the SSTs at the technicians' homes while they sleep or engage in other personal activity.  (Cartia Aff. ¶ 11; Werchan Dep. 37:20-25, Dep. Ex. 3 SW2701.)  Technicians record all billing, timekeeping, parts-ordering and service call notes on the SST.  (Cartia Aff. ¶ 11; Werchan Dep. Ex. 3 SW2698-99.)

Under the HDP, a technician is to log on to the SST in the morning before leaving for work to determine the location of the day's first customer call.  (Cartia Aff. ¶ 12;

Werchan Dep. 38:9-12, Dep. Ex. 3 SW2701.)  The log-on process requires the technician to type in a six (6) digit password on the initial computer screen and click on a "send" icon.  (Cartia Aff. ¶ 12; Werchan Dep. 38:22-39:3; Radwin[3] p. 4, Table 2.)  The SST automatically brings up a second screen that contains the address of the technician's first call of the day.  (Cartia Aff. ¶ 12; Werchan Dep. 39:4-11, Dep. Ex. 3 SW2701; Radwin p. 4, Table 2.)  Sears does not instruct technicians that they must remain at the SST during the download of the first call address "access" period.  Nor is there any business benefit to Sears if a technician chooses to do so.  (Torre Dep. 73:10-74:14; Cartia Aff. ¶ 12.)  The technician is free to go about his personal morning routine after logging on to the SST.  (Torre Dep. 73:10-74:14.)  The entire process of logging on to the SST (*i.e.*, typing in the password) has been timed by Sears' expert consultant, Robert Radwin, as taking an average of 8.5 seconds.  (Radwin p. 6, Table 3.)

Occasionally, the overnight automatic transmission of route information fails.  In this event, the technician is instructed to "upload" the prior day's customer service information and/or "download" the current day's route information by clicking on a drop-down "manual upload/download" utility icon.   (Cartia Aff. ¶ 12; Werchan Dep. 52:24-53:13, Dep. Ex. 3 SW2703x.)  If the "manual upload/download" is successful, the technician proceeds as usual.  (Torre Dep. 75:11-76:13; Cartia Aff. ¶ 13; Werchan Dep. Ex. 3 SW2703.)

---

[3] "Radwin p. __" refers to the page(s) of the report of Sears' expert Robert G. Radwin, Ph.D., CPE, which is attached in Sears' Appendix.

If the manual upload and/or download is unsuccessful, the technician is directed to contact an outside vendor, Itronics, for assistance.  (Werchan Dep. 53:14-16, Dep. Ex. 3 SW2703.)  In that event, technicians are to submit a payroll correction form (or record the additional time on the SST or call in the additional time to an administrative employee) to be paid for the time they spend resolving the SST difficulties with the upload/download function.  (Cartia Aff. ¶ 14; Werchan Dep. Ex. 3 SW2703.)  Werchan submitted timekeeping correction forms for time spent troubleshooting the SST. (Werchan Dep. 53:17-55:14, Dep. Exs. 8-9.)

Technicians are instructed to leave home and begin their commute in time to arrive at the first customer at approximately 8:00 a.m., the scheduled beginning of the workday.  (Werchan Dep. 14:4-6.)  In light of the 35-minute normal commute time, San Antonio District technicians are advised to leave home in most cases around 7:25 a.m. (Cartia Aff. ¶ 15; Werchan Dep. 39:17-40:11, 55:15-22.)  Before beginning the commute, the technician unplugs the SST from the outlet and places it in the van.  (Cartia Aff. ¶ 15; Werchan Dep. 40:5-11, Dep. Ex. 3 SW2701.)

Technicians also are instructed not to call any customers or communicate with their managers from home or during the commute.  (Cartia Aff. ¶ 16; Werchan Dep. 42:1-44:25, Dep. Ex. 3 SW2701.)  In addition, technicians are not to view SST text messages prior to starting their routes.[4]  (Cartia Aff. ¶ 16; Werchan Dep. 51:14-23, Dep. Ex. 3 SW2701.)

---

[4] The SST will not permit technicians to view the text messages until they start their routes. (Cartia Aff. ¶ 16; Werchan Dep. 51:20-23.)

### 2.      Morning Commute

Sears does not permit non-Sears employees to ride in the van or allow technicians to use the van for personal errands such as stopping for a sit-down breakfast or picking up groceries during the morning or evening commute.  Technicians may, however, make quick stops for food, drink, etc., and no technician in the San Antonio District has been disciplined for having done so.  (Cartia Aff. ¶ 17, Ex. A SW636; Werchan Dep. 76:22-77:1.)  Werchan admitted that he would stop to grab breakfast.  (Werchan Dep. 66:21-25.)

Technicians are provided Global Positioning System ("GPS") software on the SST to provide driving directions to their calls.  (Cartia Aff. ¶ 18; Werchan Dep. 40:19-41:12, Dep. Ex. 3 SW2720-27.)  Technicians may deviate from the GPS suggested route in commuting if they choose.  (Cartia Aff. ¶ 18; Torre Dep. 74:23-75:10.)

### 3.      Running the Service Route

Technicians are compensated for all time spent repairing appliances, traveling between customer calls and performing other work-related activities during the workday. (Cartia Aff. ¶ 19, Ex. A SW637-38; Torre Dep. 123:6-124:9.)

### 4.      End-of-Route Activities and Evening Commute

After completing the last customer call of the day, the technician is to complete the day's paperwork, including accounting for any cash payments received, before ending his or her route.  Upon completion of this paperwork, the technicians are to commute home.  (Torre Dep. 94:2-96:15; Cartia Aff. ¶ 20; Werchan Dep. 74:5-21, Dep. Ex. 3 SW2916.)

When technicians arrive home, they are to take the SST out of the van and plug it into their phone line and electrical outlet so that it is ready to repeat the automatic route information upload/download for the next day.  (Cartia Aff. ¶ 21; Werchan Dep. 77:2-14, Dep. Ex. 3 SW2916-17.)

### 5.   Other Incidental Activities under the HDP

Technicians participating in the HDP typically receive truck stock replenishment parts at home via UPS, to replace those used during service calls.  (Cartia Aff. ¶ 22, Ex. A SW638; Werchan Dep. 77:15-20, Dep. Ex. 3 SW2701-02.)   The frequency of delivery varies from daily to once a week, depending on usage.  (Werchan Dep. 78:2-10.) Technicians are instructed to do no more than place the parts boxes, unopened, into the back of the van at a time of their choosing.  (Cartia Aff. ¶ 22, Ex. A SW638; Werchan Dep. 77:15-78:1, Dep. Ex. 3.)

More generally, technicians are instructed not to perform tasks on their days off or during non-work hours.  (Cartia Aff. ¶ 22.)  Technicians specifically are not to sort or catalogue any parts in their vans until sometime during the workday.  (Cartia Aff. ¶ 23, Ex. B SW3191-92, SW3231-32; Werchan Dep. 24:19-25:25, 77:21-78:1, Dep. Ex. 3 SW2702.)

Similarly, technicians are told to perform other miscellaneous tasks, such as depositing customer cash payments, returning unused parts, disposing of trash or picking up clean uniforms or large parts needed for repairs, at some point during the workday or

at a regularly scheduled "ready time" meeting at the reporting office.[5]  (Cartia Aff. ¶ 24; Werchan Dep. Ex. 3 SW2916, SW2918-25; Torre Dep. 123:13-18.)  When a technician requires time to perform service on his van, such as changing the oil or washing the van, he is to advise his manager, and the manager will schedule the required service into the technician's paid working day.  (Cartia Aff. ¶ 24, Ex. A SW637; Werchan Dep. Ex. 3 SW 2944.)

### 6.   Timekeeping Entries and Pay Practices under the HDP

Technicians keep track of their time by making entries on the SST.  (Cartia Aff. ¶ 25; Werchan Dep. Ex. 3 SW2698-99, SW2940-49.)  The first entry a technician makes is "start day" when beginning his commute to the first call.  (Cartia Aff. ¶ 25; Werchan Dep. 39:12-16, Dep. Ex. 3 SW2701.)  The "start day" entry is used to compute that portion of the commute time that is paid by Sears.  (Cartia Aff. ¶ 25; Werchan Dep. Ex. 3 SW2701.)  When the technician arrives at the first customer of the day or at the unit for a meeting or to pick up a part, the technician clicks "start route."   (Cartia Aff. ¶ 25; Werchan Dep. 58:6-14, Dep. Ex. 3 SW2701-02.)   The "start route" entry begins the workday and is analogous to "punching in" at an office or factory.  (Torre Dep. 79:17-80:9; Cartia Aff. ¶ 25.)  When the technician is ready to start the first call, he clicks on "arrive call."  (Cartia Aff. ¶ 25; Werchan Dep. Ex. 3 SW2701-02.)  Upon completing a call, the technician clicks "end call" and drives to the next customer.  (Cartia Aff. ¶ 25; Werchan Dep. Ex. 3 SW2864-65.)

---

[5] Sears also provides a "miscellaneous time" function on the SST for activities the technicians engage in during the workday outside of service calls.  (Werchan Dep. 70:24-71:5, Dep. Ex. 3 SW2944; Torre Dep. 123:13-124:9.)

After his last call of the day, the technician clicks "end call," presses the "OK" button to print out the final daily reports, places the reports and any receipts from the service calls in separate envelopes for mailing, and, if time permits, takes care of any housekeeping in the van, including restocking and reordering parts. (Cartia Aff. ¶ 26; Werchan Dep. Ex. 3 SW2916.) The technician then ends the route and the workday by entering the van's mileage before commuting home. (Cartia Aff. ¶ 26; Werchan Dep. Ex. 3 SW2916-17.)

Upon arriving home, the technician is to click "end day" on the SST screen. (Cartia Aff. ¶ 27; Werchan Dep. 77:2-8, Dep. Ex. 3 SW2916-17.) The "end day" entry is used solely to compute that portion of the evening commute that may be paid by Sears. (Cartia Aff. ¶ 27; Werchan Dep. Ex. 3 SW2916-17.)

The SST automatically calculates a technician's pay based on the time entries made during the day. Under the HDP, technicians are paid from the "route start" entry until the "route end" entry. (Cartia Aff. ¶ 28; Werchan Dep. Ex. 3 SW2940-41.) The SST automatically adjusts the time of the "route start" and "route end" entries to calculate any compensable commute time in excess of the normal 35-minute commute time. (Cartia Aff. ¶ 28; Werchan Dep. 58:22-25, Dep. Ex. 3 SW2701, SW2940-41.)

### 7.    Lack of Supervisory Oversight

As a practical matter, the work time recorded by technicians is self-reported. The timekeeping rules notwithstanding, technicians are in the field without direct supervision, and there is no effective means for Sears to monitor the accuracy of the time entries

recorded by technicians or whether technicians are following the rules. (Cartia Aff. ¶ 29.)

## IV. ARGUMENT

### A. Plaintiff Werchan's Commute and Activities Incidental to the Use of the Company Van are Non-Compensable as a Matter of Law

#### 1. Sears' HDP Complies with the ECFA

It is a well-settled and long-standing principle in federal law that an employee's commute to and from work is non-compensable. Section 4(a)(1) of the Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a)(1) (the "Act"), provides that time spent "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is not to be counted as compensable work time under the FLSA. Furthermore, Section 4(a)(2) of the Act excludes from compensable time activity that occurs before ("preliminary") or after ("postliminary") the employee's principal activity. 29 U.S.C. § 254(a)(2). Here, there can be no dispute that Werchan's principal activity is servicing and repairing Sears appliances and that the workplace is in the customers' homes.

The Portal-to-Portal Act's implementing regulations confirm that commuting to and from work (i.e., the site of the principal activity) is not compensable:

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. <u>This is true whether he works at a fixed location or at different job sites</u>. Normal travel from home to work is not work time.

29 C.F.R. § 785.35 (emphasis added).

Consistent with these statutory and regulatory provisions, the courts likewise have long held that commute time to and from work, including in a company-owned vehicle, is not compensable. *Kavanagh v. Grand Union Co., Inc.*, 192 F.3d 269, 272-73 (2d Cir. 1999); *United Transportation Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1120-21 (10th Cir. 1999); *Reich v. New York City Transit Authority*, 45 F.3d 646, 651 (2d Cir. 1995); *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693, 707 (E.D. Tex. 2007); *Wren v. RGIS Inventory Specialists*, No. C-06-05778JCS, 2009 WL 2612307, at *7 (N.D. Cal. Aug. 24, 2009); *Hellmers v. Town of Vestal, New York*, 969 F. Supp. 837, 843 (N.D.N.Y. 1997); *Manners v. State*, 703 N.Y.S.2d 375, 389 (N.Y. Ct. Cl. 2000).

In 1996, Congress enacted the Employee Commuting Flexibility Act (the "ECFA") to make absolutely clear that commuting to and from work in a company-provided vehicle and engaging in activity incidental to the commute was not a compensable "principal activity" so long as: (1) the use of the vehicle was within the normal commuting area for the employer's business or establishment; and (2) the use was subject to an agreement or understanding on the part of the employer and the employee. 29 U.S.C. § 254(a).

Sears' Home Dispatch Program meets the ECFA requirements. Numerous courts, including a court in the United States District Court for the Southern District of Texas, have evaluated home dispatch programs materially identical to Sears' HDP program and have consistently held that time spent commuting in a company-provided vehicle and on related incidental activities is non-compensable under the ECFA. *See Buzek v. Pepsi Bottling Group, Inc.*, 501 F. Supp. 2d 876 (S.D. Tex. 2007); *Baker v. GTE North, Inc.*,

110 F.3d 28 (7th Cir. 1997); *Doyle v. BellSouth Communications Systems, Inc.*, No. 94-2978-D, 1996 U.S. Dist. LEXIS 18874 (W.D. Tenn. Dec. 3, 1996); *see also Rutti v. Lojack Corp.*, 578 F.3d 1084, 1092 (9th Cir. 2009).

> ### a.    Werchan's Uncompensated Commute is Appropriately Limited to a Normal Commute Time

As stated above, the ECFA provides that an employer need not pay employees commuting within a "normal commuting area."  This area is to be defined in relation to "the employer's business or establishment."  29 U.S.C. § 254(a).  Similarly, the non-compensable "normal travel from home to work" under the Portal-to-Portal Act regulations, 29 C.F.R. § 785.35, has been interpreted as referring to "what is usual within the confines of a particular employment relationship."  *Kavanagh*, 192 F.3d at 272.

Here, Sears pays technicians for time spent in their morning and evening commutes in excess of the "normal commute" time of 35 minutes.  (Cartia Aff. ¶ 6, Ex. B SW3191.)  This definition of "normal commute" is based on an analysis of actual commute times of thousands of Sears technicians traveling between home and the first customer call of the day in their assigned service areas.  (Torre Dep. 68:8-69:3.)  Sears, therefore, clearly has defined the unpaid commute time in accordance with the usual commute times for its business as required by the ECFA.

Sears' 35-minute definition also falls well within the one-hour benchmark the USDOL Wage and Hour Division has articulated, in Opinion Letter No. 2106 dated January 22, 1999, as constituting a reasonable commute under the ECFA.  It is likewise comparable to the 35-mile commute area found compliant with the ECFA in *Doyle*,  1996

U.S. Dist. LEXIS 18874, at *7-8.  *See also Vega v. Gasper*, 36 F.3d 417, 424-25 (5th Cir. 1994); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288-90 (10th Cir. 2006); *Singh v. City of New York*, 418 F. Supp. 2d 390, 399 (S.D.N.Y. 2005), *aff'd*, 524 F.3d 361 (2d Cir. 2008).

### b.  Werchan Agreed to Participate in the HDP

The undisputed record also shows that Sears satisfies the ECFA requirement that Werchan's use of Sears' van pursuant to the HDP was pursuant to an agreement or understanding between Sears and Werchan.  Technicians in the San Antonio District were advised on multiple occasions, in writing and orally, of their ability to choose whether or not to participate in the HDP.  (Cartia Aff. ¶ 8, Ex. B SW3191-92.)  The options for using the van and policies governing the use of the van were also explained in the In-Home Technician Operating Policies, which are available to technicians on the SST.  (Cartia Aff. ¶ 8, Ex. A SW637-38.)

Courts interpreting the ECFA have repeatedly confirmed that the "agreement" prong has been satisfied as long as an understanding has been reached with regard to the use of the employer's vehicle.  *Adams v. United States*, 65 Fed. Cl. 217, 225 (Fed. Cl. 2005); *Bartholomew v. City of Burlington, Kansas*, 5 F. Supp. 2d 1161, 1169 (D. Kan. 1998).  Although Werchan acknowledges that he attended meetings at which the HDP policies were discussed, he claims to have little recollection of what was discussed. (Werchan Dep. 34:18-35:25, Dep. Ex. 6.)  In particular, Werchan claims that he was never told that he had the choice whether or not to participate in the HDP.  Nevertheless,

Werchan perceives that he had no choice but to take the van home.  (Werchan Dep. 19:9-22:11, 89:22-90:12.)

As explained above, Sears' management took pains to notify all technicians nationwide of their options under the HDP on numerous occasions since the adoption of the program.   (Cartia Aff. 8, Ex. A SW637-38, Ex. B SW3191-92, SW3230-32.) Werchan's failure to acknowledge this is immaterial because, as a matter of law, Werchan's continued use of the van constitutes his agreement regarding using the van for commuting.  *See Bartholomew*, 5 F. Supp. 2d at 1165-66.

The ECFA does not require a voluntary agreement.  *See* H.R. REPORT NO. 104-585, at 11 (voluntariness language rejected).   The legislative history confirms that Congress concluded that employers could compel employees to commute in employer-provided vehicles as a condition of employment without compensating the employee for the commute.  *Id.*   The courts agree, including, most recently, the Ninth Circuit Court of Appeals.  *Rutti*, 578 F.3d at 1089 ("[b]oth the sponsors and the opponents of ECFA recognized that the requisite agreement could be part of an employee's conditions of employment"); *Adams*, 65 Fed. Cl. at 225; *Bartholomew*, 5 F. Supp. 2d at 1169. Accordingly there is no dispute, even if Werchan was *required* to use the van for commuting as a condition of employment, which is not true, there *was* a clear understanding between Werchan and Sears regarding how he would be compensated when using Sears' vehicle.  (Werchan Dep. 58:16-25.)  Moreover, Werchan admits that he never asked his manager if he could park the van somewhere other than at his home,

and he does not assert that he was ever told that he had to take the van home and participate in the HDP.  (Werchan Dep. 23:9-14.)

Sears' HDP therefore meets the two stated requirements for coverage under the ECFA.  Because there are no material factual disputes regarding Sears' compensation practices for commute time under the HDP, summary judgment should be granted to Sears as a matter of law with respect to Werchan's claim for payment for time spent commuting in the van.

### 2.    The Incidental Activities Required under the Home Dispatch Program Are Also Non-Compensable under the ECFA

Under the HDP, the only activities a technician must perform regularly before leaving home in the morning are to identify his first call on the SST and to transfer the SST to the van.  (Cartia Aff. ¶ 30; Werchan Dep. Ex. 3 SW2701.)  Similarly, the only activity a technician is required to perform under the HDP after arriving at home in the evening is to remove the SST from the truck and plug it into an electrical outlet and telephone line.  (Cartia Aff. ¶ 30; Werchan Dep. Ex. 3 SW2917.)  Technicians also are instructed to place in the back of the van the boxes delivered to their homes containing replenishment parts, whenever it is convenient, either in the morning or in the evening. (Cartia Aff. ¶ 22, Ex. B SW3191; Torre Dep. 41:2-12; Werchan Dep. 78:16-25.)

These are exactly the types of "incidental" activities necessary to facilitate the employees' use of company-provided vehicles that Congress expressly excluded from compensable work under the ECFA.  As Congress explained:

> Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning

and end of the workday are similarly not considered part of the employee's principal activity or activities and therefore need not be compensable.  It is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting.  <u>Communication between the employee and employer to receive assignments, or instructions or to transmit advice on work progress or completion, is required in order for these programs to exist.  Likewise, routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable.</u>

H.R. REP. NO. 104-585, at 5 (emphasis added).

Again, the courts, including a district court in the Southern District of Texas, agree.  *Buzek*, 501 F. Supp. 2d at 886-87.  In *Buzek*, the plaintiff was a field service technician who drove from site to site in a company-owned vehicle to repair soda, ice and vending machines.  The plaintiff was required to take home the vehicle and commute to and from home to the customer sites in the company vehicle.  The employee also was provided a hand-held device on which to record parts and service call information.  After returning home in the evening, the plaintiff was required to telephone his supervisor to report the last service calls and to plug his hand-held computer into the telephone line to upload his daily call information.  *Id*. at 877.  Magistrate Judge Stephen William Smith held these after-work activities to be non-compensable.  Citing the legislative history, the Magistrate Judge concluded that "these expressions of congressional intent unequivocally resolve [that] end-of-day reports [is an] incidental activit[y] not compensable under

- 17 -

ECFA."[6] *Id.* at 883 (citing H.R. REP. NO. 104-585, at 5).  *See also Baker*, 110 F.3d at 29, 31 (upholding under the ECFA a program in which assignments were transmitted via a portable computer); *Doyle*, 1996 U.S. Dist. LEXIS 18874, at *13-17 (receiving assignments at home on a portable computer, which took a minute or two, was an "incidental" activity); *Aiken v. City of Memphis*, 985 F. Supp. 740, 744-45 (W.D. Tenn. 1997), *aff'd*, 190 F.3d 753 (6th Cir. 1999) (time spent scheduling vehicle maintenance is an incidental activity).

Judge Smith also correctly relied on the ECFA legislative history in holding in *Buzek* that the fact that technicians carry parts and tools in the van during their commute does not serve to place a home dispatch program beyond the reach of the ECFA or make the commute or the activities related to it compensable.  501 F. Supp. 2d at 883 (citing H.R. REP. NO. 104-585, at 5).  Indeed, Congress left no doubt as to its intention, specifically stating in the legislative history that "merely transporting tools or supplies should not change the non-compensable nature of the travel."  H.R. REP. NO. 104-585, at 5.  Similar attempts to engraft an exception to the ECFA when employees transport tools and equipment while they commute in a company vehicle have been squarely rejected, most recently by the Ninth Circuit Court of Appeals in *Rutti*, 578 F.3d at 1084.  *See also Baker*, 110 F.3d at 29-30 (upholding a virtually identical "home dispatch program" under the Act where employees carried special tools in the company vans from home to the first

---

[6] District Court Judge David Hittner adopted Magistrate Judge Smith's Memorandum and Recommendations on June 26, 2007.

work site); *Doyle*, 1996 U.S. Dist. LEXIS 18874, at *8-10; U.S. DOL Op. Letter, FLSA No. 2106, 1999 DOL WH LEXIS 9 (1999).

In sum, all activities Werchan was required to perform under the HDP before starting or after completing his route were "incidental" within the meaning of the ECFA.

### 3.    HDP-Required    Activities    Are    Non-Compensable    as "Preliminary" and "Postliminary" Activities

Even if the Court were to find that the activities performed by Werchan before and after his commute pursuant to the HDP were not "incidental" activities under the ECFA, these activities are non-compensable "preliminary" or "postliminary" activities within the meaning of Section 4(a)(2) of the Portal-to-Portal Act and 29 C.F.R. §§ 790.7(a) and 790.8(c) depending on when they were performed before or after work.

It is indisputable that the principal activity for which Sears' technicians are employed is to service and repair appliances in customers' homes.  Therefore, Werchan's principal activities began when he arrived at a customer's home and ended with the completion of the last call and the day's paperwork.  Nor can Werchan successfully argue that these activities are compensable because they are "integral and indispensable," as defined in the Portal-to-Portal Act, 29 U.S.C. § 254(a), to his principal activity of servicing and repairing appliances.  Although these activities may be considered "necessary" for a technician to arrive at a customer's home and repair an appliance, this does not make them compensable any more than getting up in the morning or commuting, which, in the same sense, are just as necessary.  The United States Supreme Court in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 31-33 (2005), confirmed that merely because a

preliminary activity in some sense is necessary for an employee to perform his job does not, without more, make the activity "integral and indispensable" and hence compensable.  *See also Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) ("[i]f mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable [contrary to settled law] because it is a practical necessity for all workers to travel from their homes to their jobs."); *Keubel v. Black & Decker*, No. 08-CV-6020, 2009 WL 1401694, at *10 (W.D.N.Y. May 18, 2009).

### 4.    The Incidental Activities Required under the HDP Are *De Minimis* and Not Compensable

The incidental activities are also non-compensable as *de minimis*.  The courts have long applied a *de minimis* rule under which activities that take only a "few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984) (and cases collected therein); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (when an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all"); *IBI, Inc. v. United States*, 11 Cl. Ct. 588, 593 (1987); *Riggs v. United States*, 21 Cl. Ct. 664 (1990); *Anderson v. Pilgrim's Pride Co.*, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001), *overruled on other grounds* by *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005).  In addition, otherwise compensable work is *de minimis* if it is administratively difficult to record the time spent and/or the additional work is not regularly performed.

*Lindow*, 738 F.2d at 1062-64; *Reich v. New York City Transit Authority*, 45 F.3d at 652-53; *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999).

Here, the undisputed record, including Werchan's own admissions and Sears' expert's time measurement report, demonstrates that the incidental activities required to be performed under the HDP are clearly excludable under the *de minimis* rule.  It is undisputed that it takes only a few keystrokes to type in the password to log on to the SST in the morning to receive the location of the first call.  (Werchan Dep. 38:9-39:5.) Sears' expert timed this process as taking only a few seconds.  (Radwin pp. 5-7.)  It also takes only a few seconds to view the first call of the day and virtually no time to call up the GPS's directions to the first call or to plug in the SST at the end of the night.  (Cartia Aff. ¶ 12; Torre Dep. 74:7-75:10; Radwin pp. 6-8.)   Such minimal times are, by definition, by common sense and by law, *de minimis*.

The log-on process is also *de minimis* because the time spent is immeasurable.  It would be virtually impossible to disentangle for timekeeping purposes the few seconds Werchan actually spent at the keyboard from the time subsequent to his logging on until he started his commute while he was free to attend to personal matters.  For instance, in *Lindow*, 738 F.2d at 1062-64, the Court held that the 7 to 8 minutes employees spent daily, prior to the start of their shift, in reviewing a log book and exchanging information about their assignments for the day was *de minimis* because, *inter alia*, during that time they also engaged in social conversation, and it would be difficult to parse possibly compensable time spent reviewing logs from the social or personal activities.  *See also Anderson*, 147 F. Supp. 2d at 564 (E.D. Tex. 2001) (citing *Lindow*, 738 F.2d at 1062)

- 21 -

("[t]he majority of courts have found daily periods of approximately 10 minutes *de minimis* as a matter of law").

As to handling the replenishment parts packages, they were delivered to Werchan only on an as-needed basis, and he received parts as infrequently as once or twice a week. (Werchan Dep. 78:2-10.)  Accordingly, Werchan was required to place the parts boxes unopened in the back of the van on an irregular basis and had considerable discretion and flexibility as to when to do it.  (Werchan Dep. 77:15-78:1; Cartia Aff. ¶ 22, Ex. B SW3191.)  In addition, the time spent carrying the packages to the van is minimal and incapable of measurement, and Werchan would have to walk to the van in any event in order to drive to his first call.  It would simply not be feasible to identify and record the few extra seconds it might take him to pick up the packages, open the back door of the van and place the packages in the van.  In fact, the amount of time spent recording the time would likely be greater than the time actually spent on this activity.  *See Singh v. City of New York*, 524 F.3d 361, 371 (2d Cir. 2008) (finding that keeping track of time spent by Fire Inspectors carrying a briefcase between inspection sites would create substantial administrative difficulty for the defendant in monitoring and recording such activity).

Furthermore, technicians are paid in six-minute increments.  (Cartia Aff. ¶ 31.) The fractions of a minute required for the HDP incidental activities would, as a practical matter, disappear in the rounding.  *Contini v. United Trophy Manufacturing., Inc.*, No. 6:06-CV-432-Orl.-18UAM, 2007 WL 1696030, at *4 (M.D. Fla. June 12, 2007) (lawfulness of rounding policy whereby employees could gain or lose seven minutes of

time supported by determination that few minutes spent working before and after work were *de minimis*).

In sum, all activities Werchan was required to perform under the HDP before starting or after completing his route are precisely the types of activities that are excludable from compensable work as *de minimis*.  *See, e.g.*, *Lindow*, 738 F.2d at 1063-64; *Aiken*, 190 F.3d at 758.

### 5. Werchan Is Not Entitled to Compensation for Any Unauthorized "Off-the-Clock" Activities He May Have Performed

Plaintiff Werchan also asserts that he performed certain uncompensated additional activities before or after running his route, even though the record clearly establishes that these activities were not required and, indeed, were, by policy, not to be performed. (Werchan Dep. 40:2-11, 41:9-12, 44:4-45:7.)[7]

Thus, Werchan claims he called from home the first customer in the morning even though Sears' policy explicitly states that technicians are not to call any customer in the morning until they have started their routes.  (Werchan Dep. 41:20-42:18, Dep. Ex. 3

---

[7] Additionally, Werchan asserts in his responses to Sears' interrogatories that he received cell phone calls and text messages while driving.  (Werchan Ans. to Interrog. No. 7).  The record shows, however, that the SST does not permit technicians to read messages before the technician is on the clock.  (Werchan Dep. 51:20-23.)  Furthermore, Werchan acknowledged that he was not to talk on the cell phone while he was driving.  (Werchan Dep. 49:25-50:2.)  Moreover, Werchan also admits that his manager rarely called him before he began his route, and he could not recollect even one instance in which that occurred.  (Werchan Dep. 66:1-6.)  Werchan also asserts that he was engaged to wait at the first customer's home because he was not permitted to start his route before 8:00 a.m.  (Werchan Ans. to Interrog. No. 7.)  Sears policy states, however, that once a technician arrives at the first customer's home, the technician is to start his route and call the first customer to ask permission to begin the call early.  If the customer is not ready for the technician, the technician is to clean or organize his van.  (Werchan Dep. 55:24-57:13, Dep. Ex. 3 SW2701.)  Werchan's claim is also refuted by the fact that time records reveal that he clocked in at the customer's house before 8:00 a.m. on multiple occasions.  (Werchan Dep. 57:19-58:15, 62:17-64:18, Dep. Ex. 10 SW204-05.)

SW2701.)  Werchan further claims that he uploaded his daily route information manually at the end of the day.  (Werchan Dep. 92:17-93:13.)  Again, there is no dispute that Sears' policy and procedures provide for the automatic download of the day's route information during the early morning hours while the technician sleeps.  (Werchan Dep. 77:2-14, Dep. Ex. 3 SW2701; Cartia Aff. ¶ 11.)

Notwithstanding Sears' formal policy, Werchan testified with equivocation and inconsistency that his managers had instructed him to conduct an automatic download each evening and that they did not tell him to stop calling the first customer in the morning.  (Werchan Dep. 42:1-43:9, 93:11-96:6.)  Crediting Werchan's testimony for purposes of this Motion, his claims with respect to the alleged uncompensated activities nevertheless fail for at least two reasons.  First, even if Werchan were instructed to perform these activities, both uploading his day's route data in the evening and calling the first customer before his arrival time in the morning, they are clearly "preliminary" activities under the Portal-to-Portal Act and "incidental" to the use of the van within the meaning of the ECFA.  *See Buzek*, 501 F. Supp. 2d at 882-83 (citing H.R. REP. NO. 104-585, at 5).  Second, any such activity is also *de minimis*, given the obvious difficulty in tracking such time and the likely short duration of these activities.  *Singh*, 524 F.3d at 371; *Reich v. New York City Transit Authority*, 45 F.3d at 652-53 (time spent during commute engaged in dog care activity was *de minimis*); *Barvinchak v. Indiana Regional Medical Center*, No. 3:2006-69, 2007 WL 2903911, at *17 (W.D. Pa. Sept. 28, 2007) (time spent responding to work-related phone calls at home *de minimis*).

## V.     CONCLUSION

For all the foregoing reasons, Defendant Sears, Roebuck and Co. respectfully requests that the Court grant its Motion for Summary Judgment and dismiss all claims herein.

Dated:  January 28, 2010                    Respectfully submitted,

**SEARS, ROEBUCK AND CO.**


By:   <u>s/ Thomas G. Abram</u>
      Thomas G. Abram
      Joseph K. Mulherin
      Elizabeth N. Hall
      Vedder Price P.C.
      222 North LaSalle Street
      Suite 2600
      Chicago, IL  60601-1003
      Telephone:  (312) 609-7500

      Michael Connelly
      Allison J. Miller
      Connelly Baker Wotring LLP
      700 JP Chase Tower
      600 Travis Street
      Houston, TX 77002
      Telephone:  (713) 980-6535

      *Attorneys for Defendant*
      *Sears, Roebuck and Co.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that true and correct copies of the foregoing SEARS,

ROEBUCK AND CO.'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF

WERCHAN'S CLAIMS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

was served on:

Melissa Ann Moore                    Michael E. Lovins
Rochelle Owens                        Law Offices of Michael E. Lovins
Moore & Associates                    P.O. Box 92464
Lyric Center                          Austin, Texas 78709
440 Louisiana Street
Suite 710
Houston, Texas 77002

via ECF on January 28, 2010.

s/ Thomas G. Abram