# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD CHAMBERS and STEVEN WERCHAN, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-08-3676 |
| SEARS, ROEBUCK AND CO. and A&E FACTORY SERVICE, LLC, | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court in this wage dispute are several motions.[1] Defendant Sears, Roebuck and Company ("Sears") has filed Motions for Summary Judgment against Plaintiff Steven Werchan [Doc. # 41] and Plaintiff Richard Chambers [Doc. # 43] (collectively, "Plaintiffs").[2]  Also pending is Chambers' Motion for Class

---

[1]     Both Plaintiffs sue under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Plaintiff Chambers also sues under the Texas Pay Day Act, TEX. LAB. CODE § 61.

[2]     Plaintiff Werchan filed suit against both Sears and A&E Factory Service, LLC (A&E).  Sears and A&E are represented by the same counsel.  However, only Sears has moved for summary judgment.  All of the arguments and evidence presented by the parties in this case focus on Werchan's employment with Sears.  Further, an affidavit submitted by Paul Cartia states that he is a District Service Manager for Sears *and* A&E.  Affidavit of Paul Cartia ("Cartia Affidavit"), Exh. A to Sears' Motion for Summary Judgment on Plaintiff Werchan's Claims and Memorandum of Law on Support Thereof [Doc. # 42-1], ¶ 1.  The Court therefore assumes that Sears and A&E are related entities for the purposes of this case and they employed Werchan
(continued...)

Certification and Expedited Discovery [Doc. # 40].[3]  All motions are fully briefed and ripe for decision.[4]  After careful consideration of the parties' submissions, pertinent matters of record, and applicable legal authorities, the Court **grants** Sears' Motions for Summary Judgment and thus **denies** Chambers' Motion for Class Certification and Expedited Discovery as moot.

## I.   FACTUAL BACKGROUND

During all times relevant to this suit, both Plaintiffs were employed by Sears as in-home service technicians ("technicians").  Sears employs technicians to service and repair appliances in customers' homes.  Technicians use company-owned vans to make service calls.

---

[2]       (...continued)
concurrently.  The Court deems Sears' Motion for Summary Judgment to be brought on behalf of both entities.

[3]       Sears filed a Response to Plaintiff Richard Chambers' Motion for Class Certification and Expedited Discovery [Doc. # 56].  Chambers filed a Reply Brief in Support of Plaintiff's Motion for Class Certification [Doc. # 142].

[4]       Sears filed a Motion for Summary Judgment on Plaintiff Werchan's Claims with an Appendix [Docs. # 41, # 42] (collectively, "Sears' Werchan Motion"), and a Motion for Summary Judgment on Plaintiff Chambers' Claims with an Appendix [Docs. # 43, # 44] (collectively, ("Sears' Chambers Motion").  Sears also filed a Reply Brief in Support of its Motions for Summary Judgment on Plaintiffs' Claims [Doc. # 61], and a Combined Sur-reply in Opposition to Plaintiff Chambers' Motion for Class Certification and in Support of its Motion for Summary Judgment on Plaintiff Chambers' Claims [Doc. # 171] ("Sears Sur-reply").  Plaintiff Chambers filed a Response in Opposition to Defendant's Motion for Summary Judgment with Exhibits [Docs. # 48 - # 55] (collectively, "Chambers Response"), and a Sur-reply to Defendant's Motion for Summary Judgment [Doc. # 89] ("Chambers Sur-reply").  Plaintiff Werchan filed a Response in Opposition to Defendant's Motion for Summary Judgment [Docs. # 58, # 59] ("Werchan Response").

## A.      The Home Dispatch Program

Prior to 2001, technicians reported to work each day at a centralized location to pick up the company van and perform various other activities in preparation for the day's service calls, such as planning the service route and loading parts into the van.[5] In 2001, Sears implemented the voluntary Home Dispatch Program ("HDP").[6] Under the HDP, technicians do not report to a centralized location to start their work day; instead they report directly to the first customer in the morning and return home from the last customer at the end of the day.  Technicians keep the company van at their homes overnight.  Sears pays for all commuting expenses related to the van, including gas, maintenance, and insurance.  Technicians participating in the HDP are not paid for the first thirty-five minutes of their morning and evening commutes, that is, they are not paid for the first thirty-five minutes of the travel to the location of the first customer of the day, nor for the first thirty-five minutes of the trip to the technician's home from the last service call of the day.  Technicians are compensated for time spent commuting from the first and last service calls in excess of thirty-five minutes,

---

[5]     *See* Home Dispatch Implementation, Exh C. to Chambers' Response, at SC05615, SC05686.

[6]     Deposition of Joseph Torre ("Torre Deposition") [Doc. # 44-14], at 29-30.  Werchan testified that his service manager told him that he did not have a choice as to whether he took the Sears van home at the end of the day.  Werchan Deposition, at 21-22.  All other evidence of record, including Chambers' testimony, is that participation in the HDP was voluntary.  *See* Chambers Deposition, at 16; Torre Deposition, at 29-30; Dorenkamp Deposition, at 74-76; Cartia Affidavit, ¶ 8; In-Home Technician Operating Policies [Doc. # 42-2], at SW637-38.  In any event, Werchan does not dispute that he participated in the HDP pursuant to an agreement with Sears.

and are compensated for all trips to service calls in between the first and last calls of the day.  Thus, assuming that a technician's travel to the first assignment of the day does not exceed thirty-five minutes, the technician's compensable work day begins when he arrives at the first customer's location.  Similarly, assuming that the commute from the last stop of the day home does not exceed thirty-five minutes, his compensable work day ends when he finishes his activities at the last customer's location.

Not all Sears technicians participate in the HDP.[7]  Those that do not participate also use company vans to complete their service calls, but report every day to an office or alternative location where the company van is parked overnight.  These technicians commute each day to the office or alternative location to pick up the van, and then proceed to the first customer's home.  Non-HDP technicians are not paid for their commutes to and from the parking locations.   Non-HDP technicians' compensable day begins when they pick up the vans and ends when they return the vans to the parking location at the end of the day.

Both Chambers and Werchan participated in the HDP.

A technician's participation in the HDP is governed by instructions and procedures set forth in a manual called the SST Help System Manual ("Help

---

[7]     A Sears representative estimated that over 90 percent of its technicians participate in the HDP.  Torre Deposition, Exh. B to Chambers Response [Doc. # 43-2], at 28-29.

Manual").  The manual is available to technicians electronically on an SST, a laptop computer provided to HDP technicians, and technicians are instructed to become familiar with it.  Both Plaintiffs acknowledge that Sears provided them with the SST Help Manual and instructed them to adhere to its policies.[8]

### 1.     HDP—Morning Activities

Under the HDP, technicians are instructed to plug the SST into a telephone line and electrical outlet in their home upon returning from the last service call of the workday.  Overnight, the SST automatically uploads information about the day's completed service calls and downloads the next day's assignments from Sears' main frame computer.  Technicians are required to log onto the SST in the morning to determine the location of the first service call.[9]  To log on, the technician merely must turn on the computer, type a six digit password, and click a "send" icon.[10]  Thereafter, the SST automatically brings up a screen with the address of the technician's first call of the day.[11]  The technician is not required to stay near the SST while the screen with

---

[8]     *See* Deposition of Richard Chambers ("Chambers Deposition") [Doc. # 44-2], at 18-20; Deposition of Steven Werchan ("Werchan Deposition") [Doc. # 42-5], at 27-29.

[9]     Torre Deposition [Doc. # 44-14], at 73-74.

[10]    Affidavit of Tony Davis ("Davis Affidavit") [Doc. # 44-1], ¶ 4.

[11]    Chambers Deposition, at 27.

the address downloads.[12]  Sears' expert estimates that the log on process takes an average of 8.5 seconds.[13]

The automatic transmission of route information to the SST sometimes fails. In this circumstance, the technician is instructed to manually upload the prior day's customer service information and/or download the current day's information by clicking a manual upload/download icon via the SST Utilities page.[14]  This process requires "a couple of key strokes."[15]  If the manual/upload download is not successful, the technician is directed to contact an outside vendor for assistance with the SST.[16]  If this latter step is required, technicians are to submit a payroll correction sheet, record the additional time on the SST, or report the additional time to an administrative employee, in order to be paid for the minutes spent resolving problems with the SST.[17]

---

[12]   Davis Affidavit, ¶ 4.

[13]   Expert Report of Robert G. Radwin, Ph.D., CPE ("Radwin Report") [Doc. # 44-31], at 4.

[14]   SST Help Manual [Doc. # 44-11], at SC2422; Torre Deposition [Doc. # 44-14], at 75; Chambers Deposition, at 32.

[15]   Torre Deposition [Doc. # 44-14], at 75.

[16]   Chambers Deposition, at 32;

[17]   Deposition of Richard Paul Dorenkamp ("Dorenkamp Deposition") [Doc. # 44-9], at 102; SST Help Manual [Doc. # 44-11], at SC2422; Cartia Affidavit [Doc. # 42-1], ¶ 14.  Chambers' acknowledged that he was familiar with the page of the Help Manual that instructed technicians to submit payroll corrections if they had to contact an outside vendor for assistance.  Chambers Deposition, at 70-71.  He also admitted
(continued...)

Technicians are instructed to leave home for their first call in time to arrive by 8:00 a.m.  Prior to leaving home, Technicians are to unplug the SST and transport it to the van.[18]  Technicians are directed to not call any customers, communicate with managers, or view SST text messages during the commute to the first customer's home (the SST does not allow technicians to view text messages until they have entered that they have arrived at their first call).[19]

Sears does not allow non-Sears employees to ride in the company van or allow technicians to use the van for running personal errands such as stopping for a sit-down meal, or picking up groceries on the way to or back from the first or last stop of the day.  Quick stops, such as to pick up a cup of coffee, are permitted.

Technicians track their time by making entries on the SST.  When beginning the commute to the first service call, the technician is to enter "start day."  This entry allows the SST to track the commute time and determine the portion of the commute, if any, that will be paid by Sears.  When the technician arrives at the first customer's

---

[17]    (...continued)
that he did submit such payroll corrections, *id.*, although he claims was not told fill out a payroll correction sheet for time spent troubleshooting the SST. *Id.*, at 32-33.

[18]    Chambers Deposition, at 29-30; Werchan Deposition, at 40; SST Help Manual [Doc. # 44-11], at SC2420.

[19]    Chambers Deposition, at 26,36, 38-39; Dorenkamp Deposition, at 96, 98-99; Cartia Affidavit, ¶ 16;  SST Help Manual [Doc. # 44-11], at SC2420, SC2586.  Werchan testified that he received conflicting instructions on whether he should contact the first customer of the day prior to arriving at the first call.  Werchan Deposition, at 42-44.

home, he makes an entry signaling that he is starting the route.  This entry begins the workday for wage purposes "and is analogous to 'punching in' at an office or factory."[20]

### 2.    HDP—Service Route/Workday

As noted, Sears technicians are compensated for time spent traveling between service calls during the workday, as well as for all time spent repairing appliances and other work-related activities during the workday.

Technicians who work longer than five and a half hours in a work day are required to take a thirty minute unpaid lunch break each day.  Technicians are responsible for logging their time on the SST for each service call, and for clocking in and out for the lunch break.

### 3.    HDP—End of Route Activities

After completing the last service call of the day, the technician makes an entry on the SST signaling that the last call is completed.  The SST prompts the technician to print out final reports for the day.[21]  Prior to beginning the commute home, and while still on the clock, the technician is to engage in "winding down" activities such as completing paperwork, putting funds from the day's calls in envelopes and

---

[20]    Sears' Chambers Motion, at 9.

[21]    Torre Deposition [Doc. # 44-14], at 94-96; SST Help Manual [Doc. # 44-11], at SC2635-366.

documenting parts usage.[22]  "[I]f time permits, [the technician] takes care of any housekeeping in the van, including restocking and reordering parts."[23]  The technician then ends the day's route by entering the van's mileage before driving home.[24]  Upon arriving home, the technician clicks "end day" on the SST to allow for the calculation of the portion of the evening commute, if any, that will be paid by Sears.  Technicians are paid from the time they arrive at the first service call and enter that they are "starting the route" until they finish the last service call and enter the van's mileage, with the exception of lunch breaks.[25]  The SST automatically makes any adjustments to technician pay based upon commutes in excess of thirty-five minutes.[26]

### 4.    HDP—Other Activities

Technicians receive by UPS packages "truck stock replenishment parts" at their homes.   Under the HDP, the frequency of these deliveries varies from daily to once a week depending on usage.   Technicians are directed to place the boxes of parts,

---

[22]    Torre Deposition [Doc. # 44-14], at 94-96; SST Help Manual [Doc. # 44-11], at SC2635-36.

[23]    Cartia Affidavit, ¶ 26; *see also* Dorenkamp Deposition, at 185-186; SST Help Manual [Doc. # 44-11], at SC2635-36.

[24]    Cartia Affidavit, ¶ 26; Dorenkamp Deposition, at 185-186; SST Help Manual [Doc. # 44-11], at SC2635-36.

[25]    Cartia Affidavit, ¶ 28; SST Help Manual [Doc. # 44-11], at SC2659-60.

[26]    Cartia Affidavit, ¶ 28; SST Help Manual [Doc. # 44-11], at SC2659-60.

unopened, into the van at a time of their choosing.  The parts are not to be sorted and placed in the appropriate bins until sometime during working hours.[27]

Technicians are also instructed to perform other tasks, such as depositing customer payments, mailing cash envelopes, turning over credit-card-receipt envelopes to management, returning unused parts, disposing of trash, or picking up uniforms or large parts during working hours or at a regularly scheduled meeting at the office.[28]  Technicians are directed to inform their managers when their van needs service.  The manager then schedules time into the technician's paid working day for the service.[29]

## B.    Plaintiffs' Claims

Both Plaintiff Chambers and Plaintiff Werchan allege that under the HDP, they were required on a daily basis to perform compensable work without being paid. Accordingly, both Plaintiffs allege that Sears has failed to pay overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Chambers also brings a claim under the Texas Payday Law, TEX. LAB. CODE § 61.011.  Chambers additionally seeks certification of a class action against Sears.

---

[27]     Dorenkamp Deposition, at 83; Cartia Affidavit, ¶ 22; SST Help Manual [Doc. # 44-11], at SC2421.

[28]     Dorenkamp Deposition, at 55-56, 108-09, 136-37, 139; Cartia Affidavit, ¶ 24; SST Help Manual [Doc. # 42-6], at SC2918-2922.

[29]     Dorenkamp Deposition, at 107, 126, 165-66; Cartia Affidavit, ¶ 24.

Sears has moved for summary judgment on all claims against both Plaintiffs. Because Sears' Motions for Summary Judgment are potentially dispositive of this dispute, the Court address those Motions first.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving

party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* Fed. R. Civ. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat

summary judgment where the evidence in the record is to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud."  (citation omitted)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id* (internal citations and quotations omitted); *see also de la O v. Hous'g Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  Further, the Court has no obligation to raise and analyze a party's position in the absence of that party's meaningfully briefing the point.  *Cf. United States v. Griffith,* 522 F.3d 607, 610 (5th Cir. 2008) ("It is a well-worn principle that the failure to raise an issue on appeal constitutes waiver of that argument").

## III.   ANALYSIS

### A.   Plaintiffs' Fair Labor Standards Act ("FLSA") Claims

#### 1.   Applicable Law

Plaintiffs allege that they have been denied overtime compensation in violation of the FLSA, which provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee bringing an FLSA action for unpaid overtime compensation "must first demonstrate that she has performed work for which she alleges she was not compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005).

Neither "work" nor "workweek" is defined by the statute. *IDP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005). The Supreme Court's "early cases defined those terms broadly." *Id.* (citing, *inter alia*, *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (defining "work or employment" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business"), *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) (clarifying that "exertion" was not necessary to establish "work" under the FLSA because "an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen")). Thus, in *Anderson v. Mt. Clemens Pottery Co.*, the Supreme Court held that time spent by employees walking from time clocks near a factory

entrance gate to their workstations must be considered part of the workweek.  328

U.S. 680, 691-92 (1946).

One year after the Supreme Court's decision in *Anderson*, Congress, finding

that the judiciary's interpretations of the FLSA had superseded "long-established

customs, practices, and contracts between employers and employees, thereby creating

wholly unexpected liabilities," amended the FLSA by passing the Portal-to-Portal Act.

*Alvarez*, 546 U.S. at 26 (citing 61 Stat. 84).  The Portal-to-Portal Act narrows the

scope of compensable activities by excepting two categories of activities that had been

compensable under prior Supreme Court precedent.  *Id.*; 29 U.S.C. § 254(a).  Under

the Portal-to-Portal Act, employers are not liable under the FLSA for failing to

compensate employees for:

> (1)    walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2)    activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a); *Alvarez*, 546 U.S. at 27.

"Principal activity is not defined by the statute.  The Fifth Circuit "traditionally

has construed the term 'principal activity' to include activities 'performed as part of

16

the regular work of the employees in the ordinary course of business . . . [the] work is necessary to the business and is performed by the employees, primarily for the benefit of the employer. . . ." *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994) (citing *Dunlop v. City Elect., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976). The Supreme Court has held that any activity that is "integral and indispensable" to a compensable "principal activity" is itself a compensable "principal activity" for purposes of the Portal-to-Portal Act. *Alvarez*, 546 U.S. at 37; *Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956).

Congress amended the Portal-to-Portal Act in 1996 with the passage of the Employment Commute Flexibility Act ("ECFA"), which clarifies the applicability of the Portal-to-Portal Act to the payment of wages to employees who use employer-provided vehicles. Clarification was necessary because of two conflicting opinion letters on the topic issued by the Department of Labor in 1994 and 1995, respectively. *See* H.R. REP. NO. 104-585 (1996), at 3-4.[30] The ECFA amended the Portal-to-Portal Act by adding the following language to Section 4:

---

[30]   In 1994, the Department of Labor ("DOL") issued an opinion letter stating that travel in a company car from home to the first work assignment of the day, and from the last assignment of the day back home, was like travel between work sites during the day and was therefore compensable as a principal activity. *Id.* (citing U.S. Dep't Lab. Op. Ltr. (Aug. 5, 1994)). Following expressions of concern from Members of Congress, the DOL issued a revised opinion letter in 1995. *Id.* (citing U.S. Dep't Lab. Op. Ltr. (April 3, 1995)). The revised opinion letter in 1995 stated that such travel would *not* be compensable if certain conditions were met. *Id.*

> For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).  The ECFA specifies that "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities" if two conditions are met.  29 U.S.C. § 254(a).  To be non-compensable under the Portal-to-Portal Act as amended by the ECFA, the use of the vehicle and incidental activities must be (1) "for travel that is within the normal commuting area for the employer's business or establishment"; and (2) "subject to an agreement on the part of the employer and the employee or representative of such employee."  *Id.*; *Rutti v. Lojack Corp., Inc.*, 596 F.3d 1046, 1051-52 (9th Cir. 2010); *Buzek v. Pepsi Bottling Group, Inc.*, 501 F.Supp.2d 876, 879-80 (S.D. Tex. 2007).

### 2.    The Morning and Evening Commute Under the ECFA

Plaintiffs contend that the time they spend traveling to the first service call of the day and  traveling home from the last service call is compensable under the FLSA.  The Court disagrees.

It is well settled that ordinary home-to-work travel is not compensable under the Portal-to-Portal Act in the absence of a contract or custom of compensation that exists between the employer and the employees. *Vega*, 36 F.3d at 424 (holding that seasonal farm workers were not entitled to compensation for daily commutes of at least four hours) (citing 29 U.S.C. § 254; 29 C.F.R.§ 785.34-35; 29 C.F.R. 790.7(f)).

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. *This is true whether he works at a fixed location or at different job sites.* Normal travel from home to work is not worktime.

29 C.F.R. § 785.35 (emphasis added); *Vega* 36 F.3d at 424.   It is clear that an employee's ordinary commute to and from work is generally non-compensable under the Portal-to-Portal Act.

As noted, Congress passed the ECFA to clarify that an employee's commute in a company car is not compensable if the two statutory conditions are met.  Plaintiffs do not contest that they participated in the HDP subject to an agreement, and thus the second condition — that the employee's use of the vehicle be subject to an agreement with the employer — is met.  Plaintiffs focus on the first condition and contend that the HDP fails to meet the ECFA criteria because it requires travel outside the "normal commuting area."   Plaintiffs also argue that various conditions placed on the

employee's use of the van take the program outside the scope of non-compensability intended by Congress in passing the ECFA.

### a.    "Normal Commuting Area"

For travel to meet the requirements of the ECFA, it must be "within the normal commuting area for the employer's business or establishment."  29 U.S.C. § 254(a). Plaintiffs contend that under a plain language analysis, the normal commuting *area* must be defined by distance, not as a function of time.  Plaintiffs urge that defining commute by time is problematic, first, because the commuting area may change from day to day based on factors such as traffic and weather.  Second, Plaintiffs note that Sears defines the normal commute time under the HDP as thirty-five minutes nationwide (with the sole exceptions of the State of Washington and Saint Louis),[31] and that this does not take into account differences between urban, suburban and rural locations.

Plaintiffs' attack on the HDP's definition of a normal commute is unpersuasive. Plaintiffs cite no authority for the thesis that a normal commute must be defined by distance and not time, and nothing in the statutory language compels such a result. The statute requires only that the travel be within the "normal commuting area for the employer's business or establishment."  Indeed, in light of the fact that wages are paid

---

[31]    *See* Torre Deposition [Doc. # 44-14], at 42.

by the hour—not by miles traveled—it is not unreasonable to define a commute by travel time rather than by distance.

Guidance from the Department of Labor ("DOL") confirms this interpretation. In a 1999 Opinion Letter interpreting the ECFA, the DOL stated that a home-based employee traveling in a company van would not need to be compensated for travel from home to a work site unless "the time involved is extraordinary." U.S. Dep't Lab. Op. Ltr. (January 29, 1999). The Opinion Letter continued:

> For example, where a field engineer's commute to the first job site in the morning takes four hours, we would consider the greater portion of travel time compensable under the principles described in 29 C.F.R. § 785.37. That rule allows a portion of the total commute time to be considered non-compensable home-to-home travel. If the employer treated three of the four hours as compensable travel, we would not question such practice.

*Id.* The DOL reasoning thus confirms not only that time is appropriate to measure what constitutes a normal commute for purposes of the ECFA, but also that commute times of up to one hour would comply with that statute. Other courts have ruled that commutes far longer than thirty-five minutes are within the definition of ordinary home to work travel and are hence non-compensable under the Portal-to-Portal Act. *See, e.g.*, *Smith v. Aztec Well Serv'g Co.*, 462 F.3d 1274, 1288-90 (10th Cir. 2006) (commutes of up to three and half hours non-compensable); *Vega*, 36 F.3d at 424 (daily commutes of up to four hours non-compensable).

The uncontradicted record evidence shows that Sears conducted studies of employee commutes before establishing a thirty-five minute commute time.[32] Plaintiffs have produced no evidence that their commutes were greater than the thirty-five minute allotment or that this period is otherwise not "normal" for their "employer's business or establishment."  Moreover, under the HDP, to the extent that an employee's commute exceeds thirty-five minutes, the employee is compensated for the overage.  Plaintiffs' complaints about a lack of predictability are thus misplaced. To the extent that an employee's commute unexpectedly takes longer than thirty-five minutes, the employee is paid for the excess part of the commute.  The Court holds that Sears' HDP complies with both prongs of the ECFA.

**b.      Conditions on Employees' Use of Company Vans**

Plaintiffs next argue that conditions placed upon employees' use of company vans make the ECFA inapplicable to this dispute because commutes under the HDP are not "normal."  Specifically, Plaintiffs complain that under the HDP they are not permitted to use the company van "(1) on days off for personal or non-company use; (2) to pick up children from school; or (3) for any personal errands unless they are short in duration (*e.g.* stopping to get a cup of coffee)."[33]   Plaintiffs note that

---

[32]      Torre Deposition [Doc. # 44-14], at 68-69.

[33]      Chambers Response, at 12-13.

technicians are not permitted to meet family or friends during their morning or evening commute times, and that they are required to drive home directly from their last call—no detours are permitted unless short in duration.[34]  Plaintiffs also point out that they are required to transport tools and parts in the company van during the morning and evening commutes.[35]  Plaintiffs contend that these restrictions on the use of the van during the morning and evening commute prevent technicians from using this time as they otherwise would and therefore make the commute times compensable.

The Court is entirely unpersuaded.  Nothing in the statutory scheme requires, or even implies, that such conditions on an employee's use of a company car, including the transportation of parts or tools, can transform an otherwise non-compensable commute in to a compensable one.  In fact, the ECFA expressly provides that "activities performed by an employee which are incidental to the use of [the employer's] vehicle for commuting shall not be considered part of the employee's principal activities." 29 U.S.C. § 254(a).  Again, Plaintiffs cite no authority for the proposition that conditions like those Sears placed upon Plaintiffs' use of the company

---

[34]    *Id.*

[35]    *See, e.g.*, *id.* at 20.

vans make commute time compensable under the ECFA.[36]   Moreover, reported decisions do not support Plaintiffs' contentions.  *See Rutti*, 596 F.3d at 1053-54; *Buzek*, 501 F.Supp.2d at 877, 886-87 (employee's commute in company vehicle was not rendered compensable by rules that he not drive the vehicle for personal reasons, that he must drive directly from home to the first stop of the day and directly home from the last stop of the day, and that he transport tools and parts in the vehicle); *see also Singh v. City of New York*, 524 F.3d 361, 371 (2d Cir. 2008) (inspectors' commute was not made compensable by the fact that inspectors were required to carry bag of documents and were forced to go directly home from work).

Indeed, in a comprehensive opinion, the Ninth Circuit recently rejected an argument substantially similar to the one Plaintiffs advance here.  *See Rutti*, 596 F.3d at 1053-54.  In *Rutti*, a home-based technician sought compensation for his commutes in a company vehicle to and from the first and last customer call of the day, and for certain activities he performed before he left home for work and after he returned.  *Id.* at 1049.  The technician argued, *inter alia*, that the employer's "restrictions against using the vehicle for personal pursuits and transporting passengers, the requirement that he drive directly from home to work and from work to home, and the requirement

---

[36]      Indeed, Plaintiffs cite only to the *minority* report in the legislative history of the ECFA.  *See, e.g.* Werchan's Response, at 13-14.  This report did not effect change in the bill in this regard before the legislation was enacted.

that he have his cell phone on" exceeded the scope of "incidental" activities under the ECFA and made his commute an integral and indispensable part of his principal activities for the employer.  *Id.*  The Ninth Circuit disagreed with the employee, finding that his argument found "no support in the language of the ECFA, is counter to its legislative history and has been rejected by those courts that have considered the issue."  *Id.* at 1053.

The *Rutti* court analyzed the legislative history of the ECFA.  The House Report for the bill states that:

> Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday are similarly not considered part of the employee's principal activity or activities and therefore need not be compensable. It is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting.  Communication between the employee and employer to receive assignments, or instructions or to transmit advice on work progress or completion, is required in order for these programs to exist. Likewise, routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable.  Merely transporting tools or supplies should not change the noncompensable nature of the travel.

H.R. REP. NO. 104-585 at 5; *Rutti*, 596 at 1053.  Conversely, the *minority* report on the ECFA, without success, expressed objections to the bill on the ground that "non-employee passengers in such vehicles are uniformly prohibited" and an employee could be "effectively prohibited from engaging in the very common and often

necessary family task of dropping off his or her child at school on the way to work."

H.R. REP. NO. 104-585 at 13; *Rutti*, 596 F.3d at 1053.  The Court agrees with the *Rutti*

panel: "The failure of the minority report to stimulate any change in the bill indicates

that Congress did not object to employers setting conditions on their employees' use

of company cars for commuting."  596 F.3d at 1053.

The Court holds that the conditions placed upon technicians' use of the

company vans under the HDP, including transporting tools and supplies, does not

transform the technicians commutes to and from the first and last service calls of the

day into compensable time under the FLSA.

### 3.    Plaintiffs' Other Alleged Off-the-Clock Activities Under the ECFA

Plaintiffs argue that, in addition to the start and ending commutes of the day,

they should be compensated for all other activities they performed prior to and after

the paid workday.  The Court does not agree on the facts presented.

As noted above, the Portal-to-Portal Act amended the FLSA to relieve

employers of  liability for an employee's activities that are "preliminary to or

postliminary to" the employer's "principal activity or activities."   29 U.S.C.

§ 254(a)(2).  In 1955, the Supreme Court held that despite the general rule that

preliminary and postliminary activities are not compensable,

activities performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the Fair Labor Standards Act if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by Section 4(a)(1).[37]

*Steiner*, 350 U.S. at 256.   Stated another way, "the Portal-to-Portal Act does not remove activities which are 'integral and indispensable' to 'principal activities' from FLSA coverage precisely because such activities are themselves 'principal activities.'" *Alvarez*, 546 U.S. at 340.   The Fifth Circuit has held that the test for whether an activity is a principal activity, or an integral and indispensable part of such an activity, is "whether the activity is performed as part of the regular work of the employees in the ordinary course of business. . . . [W]hat is important is that the work is necessary to the business and is performed by the employees, primarily for the benefit of the employer."   *Dunlop*, 527 F.2d at 400-401; *see also Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 454 (5th Cir. 2009) ("To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer.").

---

[37]     Section 4(a)(1) of the Portal-to-Portal Act provides that employers are not liable for time spent by employees: "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform. . . ." 29 U.S.C. § 254(a)(1); *Steiner*, 350 U.S. at 253 n.2.

The ECFA, in turn, expressly provides that "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are *incidental to the use of such vehicle for commuting* shall not be considered part of the employee's principal activities."  29 U.S.C. § 254(a) (emphasis added).  Thus, under the foregoing law, if the disputed activities were "incidental" to the use of the company van for commuting, they are not principal activities.  On the other hand, if these activities were "integral and indispensable" to Sears' "principal activity or activities," they are compensable.[38]

---

[38]   Plaintiffs argue that an activity can be incidental to the employee's use of the employer's vehicle for the commute under the ECFA, but nevertheless compensable as integral and indispensable to an employer's principal activity.  In this connection, Plaintiffs assail the *Buzek* court's holding that the ECFA created a third exemption from compensability under the Portal-to-Portal Act, *see Buzek*, 501 F.Supp.2d at 885-886, and cite to two unpublished cases holding that the ECFA merely clarifies the limits of the Portal-to-Portal exemptions.  *See Burton v. Hillsborough County,* 181 F. App'x 829, 835 (11th Cir. 2006); *Reich v. Brenaman Elec. Serv.*, 1997 WL 164235, at *5-*6 (E.D.Pa. Mar. 28, 1997).  The Court disagrees with Plaintiffs' analysis of the law.  First, Plaintiff's interpretation would render the ECFA meaningless.  The ECFA provides by its express terms that "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting *shall not be considered part of the employee's principal activities.*"  29 U.S.C. § 254(a) (emphasis added).  Whether the addition of this language to the Portal-to-Portal Act created a new category of activities exempted from compensability, or merely clarified that these activities were never intended to be compensable in the first place, is of no moment in the case at bar.  Either way, with the enactment of the ECFA, Congress made clear that activities within its scope are not compensable.  *See id.*; *see also* H.R. REP. NO. 585-104, at 5 ("Activities which are merely incidental to the use of an employer-provided vehicle for commuting at the beginning and end of the workday. . .need not be *compensable*." (emphasis added)).

Finally, even if Plaintiffs' activities are integral and indispensable to a principal activity, they nevertheless may be non-compensable if they are de minimis.  In *Anderson*, the Supreme Court held that when "the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded."  328 U.S. at 692.  "It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."  *Id.*  "The de minimis rule provides that an employer, in recording working time, may disregard 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes.'"  *Mireles v. Frio Foods*, *Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) (quoting 29 C.F.R. § 785.47).

> This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47; *Mireles*, 899 F.2d at 1414 (holding that when employees were ordered to report to work at a certain time, but were made to wait fifteen minutes per day before actually beginning productive work, they were engaged to wait and the wait time was not de minimis).

In analyzing whether an activity is de minimis, courts look to several factors: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Rutti*, 596 F.3d at 1057 (citing *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984)); *see also Singh*, 524 F.3d at 371 (any additional commuting time incurred by inspectors who were required to carry inspection documents, and testified that the documents occasionally caused them to miss a bus or train or walk slower, was de minimis); *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (commutes of dog-handling law enforcement officials were not rendered compensable because they had to sign on to the radio and occasionally make stops to walk the dogs as these activities were de minimis).   The three-prong test "reflects a balance between requiring an employer to pay for activities it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'"   *Rutti*, 596 F.3d at 1057 (quoting *Lindlow*, 738 F.2d 1057, 102 (9th Cir. 1984)).

In *Lindow*, the Ninth Circuit noted that most courts "have found daily periods of approximately ten minutes de minimis even though otherwise compensable." *Lindow*, 738 F.2d at 1062 (holding that because of, *inter alia*, the administrative difficulty in deciphering the amount of time spent on compensable rather than social

activities, seven to eight minutes per day spent by employees reading a log book and exchanging information was de minimis).  The court noted, however, that "there is no rigid rule that can be applied with mathematical certainty."  *Id.* at 1062; *see also Rutti*, 596 F.3d at 1058 (*Lindow* did not adopt a ten or fifteen minute de minimis rule).

### a.    Disputed Activities

Based on the foregoing legal principles, the Court turns to the disputed activities in the instant case.  Plaintiffs allege that they were required to perform a variety of tasks without compensation.  Specifically, Plaintiffs stated in their affidavits that they performed the following morning activities without compensation:

- Log onto the SST from home and ensure that it functions properly and has completed the automatic download of the day's route;

- Check the first job location on SST;

- Unplug the SST from telephone line and electrical outlet and carry the SST from home to the service vehicle;

- Plug the SST into the docking station inside the service vehicle;

- Remove trash from the service vehicle that has accumulated from the previous day;

- Conduct a pre-trip vehicle safety inspection;

- Load boxes of parts that had been delivered to technician's home via UPS as needed and unpack and store parts;

- Transport parts to customers' homes; and

- If needed, refuel the service vehicle.[39]

Chambers states that, excluding the drive time, these activities took approximately thirty minutes every morning.[40]  Werchan also adds that he called the first customer during his morning commute.[41]  Werchan states that his morning activities, including calling the first customer, took him ten to twenty minutes per day excluding drive time.[42]

Plaintiffs state in their affidavits that they performed the following activities without compensation in the evening after finishing their last call:

- Ensure that service vehicle is neat and orderly;

- Prepare and transmit end-of-day reports via the SST;

- Ensure that customer payments are properly accounted for and related activities;

- Make bank deposits;

- Place credit card receipts and other paperwork in envelopes, locate a mailbox and mail the paperwork to Sears;

---

[39]     Affidavit of Richard Chambers ("Chambers Affidavit"), Exh. O to Chambers Response, ¶ 9; Affidavit of Steven Werchan ("Werchan Affidavit"), Exh. P to Werchan Response, ¶ 9.

[40]     Chambers Affidavit, ¶ 9.

[41]     Affidavit of Steven Werchan ("Werchan Affidavit II"), Exh. R to Werchan Response.

[42]     Werchan Affidavit, ¶ 9.

- Remove the SST from the service vehicle, take it inside the technician's home, and plug into it an electrical outlet to charge and a telephone jack to transmit and receive data;

- Load boxes of parts that had been delivered to the technician's home via UPS as needed;

- If needed, refuel the service vehicle.[43]

Chambers states that, excluding the drive time, these evening activities took approximately thirty minutes.[44] Werchan states that his evening activities took him ten to twenty minutes per day excluding drive time.[45]

As set forth in the factual background section of this Memorandum and Order, only some of these alleged activities were to take place off-the-clock under the HDP. The Court turns first to those activities authorized under the HDP for off-the-clock performance before analyzing the additional activities Plaintiffs claim to have performed outside the workday.

### b.   Activities Authorized Under the HDP

***SST Activities and the Transportation of Parts and Tools***.— Plaintiffs argue that they should be compensated for all activities relating to the SST and for the transportation of the parts and tools in the company van during their commutes.  As

---

[43]     Chambers Affidavit, ¶ 16; Werchan Affidavit, ¶ 16.

[44]     Chambers Affidavit, ¶ 16.

[45]     Werchan Affidavit, ¶ 16.

detailed in the factual background above, under the HDP, technicians are required to log onto the SST in the morning to learn their first assignment. Sears has produced uncontradicted expert testimony that this process takes approximately 8.5 seconds.[46] If the technician discovers that the automatic, overnight upload/download process was not successful, he is to perform this function manually with a "a few key strokes." If the manual process is unsuccessful, the technician is compensated for any additional time spent troubleshooting the SST. After logging on and receiving the location of the day's first service call, the technician is required to unplug the SST and carry it to the van, where it is plugged into a docking station. The technician then commutes to the first service call of the day, transporting any parts and supplies that are present in the van. At the end of the day, the technician unplugs the SST from the van, carries it into his house, and plugs it into an electrical outlet and phone line so that it can automatically upload information regarding the current day's service stops and download the next morning's assignment overnight.

The Court concludes, based on the evidentiary record presented, that the various SST activities and the transportation of tools and parts in the company van under the HDP are incidental to the technicians' commute under the ECFA and thus non-

---

[46] As noted above, Plaintiffs report, respectively, that their respective morning, off-the-clock activities took thirty and ten to twenty minutes. Plaintiffs do not provide any evidence of the amount of time they spent on each specific task.

compensable.   Although  the  statute  does  not  define  "incidental,"  the  ECFA's

legislative history makes clear that Congress intended these types of activities to be

non-compensable.  As noted above, the House Report for the ECFA stated that though

it was not "possible to define in all circumstances what specific tasks and activities

would be considered 'incidental' to the use of an employer's vehicle for commuting[,

c]ommunication  between  the  employee  and  employer  to  receive  assignments,  or

instructions or to transmit advice on work progress or completion, is required in order

for these programs to exist."  H.R. REP. NO. 104-585 at 5.  Here, the home use of the

SST, both with regard to logging in to receive the first assignment in the morning, and

plugging it in so that assignment may be transmitted at night, is for communication

with the employer in order to receive assignments.[47]

Similarly, the House Report specifically states that "merely transporting tools

or supplies should not change the noncompensable nature of the travel."  *Id.*  There

is  no  evidence  that  transporting  the  parts  and  tools  under  the  HDP  increased  a

technician's commute times in any respect.

---

[47]    While it is true that plugging the SST into the phone line at the end of the day is also
for  the  purpose  of  uploading  information  about  assignments  completed  during  the
current day, the cited legislative history specifically contemplates that this type of
activity would be non-compensable.  *See* H.R. REP. NO. 104-585 at 5 ("Communication
between  the  employee  and  employer  to . . .   transmit  advice  on  work  progress  or
completion,  is  required  in  order  for  these  programs  to  exist.").   In  any  event,  it  is
necessary to plug the SST to receive the next day's assignment, an activity that is
clearly incidental to the commute.

Because these activities relate to the employee's commute, and not the principal activities of the employer, they are non-compensable. *See Rutti*, 506 F.3d at 1057 (holding that the technician's morning activities of "receiving, mapping and prioritizing jobs and routes for assignments," are related to his commute, clearly distinct from his principal activities from his employer, and not compensable); *Buzek*, 501 F.Supp.2d at 886 (home-based technicians' transportation of tools in company car (and completion of end-of-day reports at home) were incidental to commute and thus non-compensable); *Doyle v. BellSouth Communications Sys., Inc.*, 1996 U.S. Dist. LEXIS 18874 (W.D. Tenn. Dec. 3, 1996) (transmission of assignments on a portable computer to an employee in a home dispatch program who commuted in a company car was incidental to the commute and non-compensable).

Even if the SST activities were not incidental to the commute, and were instead integral and indispensable to Sears' principal activities, these activities are nevertheless non-compensable as de minimis. There is no evidence to indicate that logging into the SST, carrying it to the van, plugging it into the van, and then carrying it back and plugging it in at home, would take, in aggregate, more than a "minute or so" over what the employee's walks to and from the van otherwise would consume. *See Rutti*, 596 F.3d at 1057 (holding that morning activities including filling out paperwork were de minimis because there was "nothing to suggest that this took more

than a minute or so").  It would be administratively difficult to keep track of this time because each individual SST-related activity is of such fleeting duration.[48]  Further, one cannot segregate time spent walking to and from the van in the morning and evening with the SST from merely commuting, which is non-compensable.[49]

Similarly, because there is no evidence that transporting the parts and tools increased technician's commute times in the slightest, this activity is also de minimis. The daily SST activities and transportation of parts and tools are not compensable.

---

[48]   This conclusion assumes no computer problems that required technical specialists' intervention.  If the specialists are necessary, Sears concurs that the technicians' time is compensable under the HDP.

[49]   Notably, plugging the SST into a phone line and electrical outlet at the end of the day is not like the end of day transmissions in *Rutti,* which were also performed at the employee's home.  There, the technicians were required to upload information about work performed during the day by plugging a portable data terminal into a modem provided the company.  *Rutti,* 596 F.3d at 1057. The technicians were required to check to ensure that the transmission was complete, and there was evidence that it often took more than one attempt.  *Id.* at 1050.  Further, the technicians were not to transmit within ten minutes before or after the turn of the hour because the corporate computer system reset itself at that time.  *Id.* at 1050.  Technicians were instructed to wait an hour if they encountered technical difficulties before trying again.  *Id.*  If transmission was still unsuccessful after two attempts, the technicians were instructed to call the host computer and document the problems.  Noting that there was evidence that the plaintiff-technician spent fifteen minutes a day—over an hour a week, on the transmission task, the Ninth Circuit held that there was an issue of fact as to its compensability.

In the case at bar, Sears does not require technicians to monitor the SST after they plug it in as the technicians were required to do in *Rutti*.  On the record presented, it appears that if any problems arise with the SST, they arise in the morning when the technician attempts to log in.  Unlike in *Rutti*, to the extent a technician had to spend an appreciable amount of time troubleshooting the SST, he was compensated for this effort under the HDP.

***Placing Replenishment Parts in the Van***.— Under the HDP, Sears sent replenishment parts by UPS to technicians' homes.  The technicians were directed to place the boxes into the van, outside the workday because this task must be performed when the vans are at technicians' homes.  Technicians may, however, load the boxes at a time of their choosing.  The technicians specifically are instructed, however, not to unpack the boxes or sort the parts outside of the workday.[50]  In fact, this instruction was "stamped right on the box" in which the tools were sent.[51]

This loading task (which is short in duration) appears to be incidental to the use of Sears' vans for the commute, because loading of supplies is "required in order for [the HDP] to exist."  *See* H.R. REP. NO. 104-585 at 5.  Even if not incidental, the Court holds that the time it takes for a technician to place boxes of replenishment parts into his van is de minimis.  Both Plaintiffs testified that they received the boxes of parts sporadically.  Chambers testified that he mostly received shipments once or twice a week.[52]  Werchan testified that the frequency of shipments varied, but that he might get two or three deliveries a week.[53]  Plaintiffs cite to no evidence indicating that placing the boxes in the vans was particularly difficult or required more than a couple

---

[50]   Chambers Deposition, at 48; Werchan Deposition, at 77-78.

[51]   Chambers Deposition, at 48.

[52]   *Id.* at 49.

[53]   Werchan Deposition, at 78.

of minutes at most.  It would also be administratively difficult to track the amount of time technicians spent placing unopened boxes of parts in their vans a couple of times per week.  This is especially true since technicians were allowed to place the boxes in the vans at their leisure, including during the morning walk to the van that was already necessary to begin the commute, a non-compensable event.  The periodic placement of boxes of parts in the service vans under the HDP is not compensable under FLSA.

### c.    Activities Not Authorized by the HDP

Plaintiffs also allege that they performed other activities without compensation. Both Plaintiffs allege that they removed trash from the van in the morning, conducted pre- and post-trip vehicle safety inspections, ensured that the van was neat and tidy in the evening, unpacked and sorted parts, prepared and transmitted end of day reports via the SST, ensured that customer payments are properly accounted for, made bank deposits, and placed credit card receipts and other paperwork in envelopes and mailed

them to Sears.[54]  Werchan also claims that he called the first customer of the day

before going on the clock in the morning.

The HDP does not direct Plaintiffs to perform any of these activities off-the-

clock.[55]  Plaintiffs will therefore only be entitled to compensation for tasks of which

---

[54]   Plaintiffs assert in their affidavits, without any support or detail, that they were "required" to perform the listed activities either before or after work, or both. As set forth above, the evidence of record establishes that, under the HDP rules, the activities to which Plaintiffs refer were *not* to be performed off-the-clock.  Further, in some respects Plaintiffs' affidavits contradict their deposition testimony and will not be considered.  *See S.W.S. Erectors, Inc v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996) (a party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony").  For example, Plaintiffs acknowledged in their depositions that they were instructed not to unpack and sort replenishment parts outside the workday, Chambers Deposition, at 48; Werchan Deposition, at 77-78, and thus implicitly concede that this was the HDP policy.  Another example is that the SST Help Manual is clear that banking and mailing envelopes is to be done during the workday after arriving at the first customer's location.  SST Help Manual [Doc. # 42-6], at SW2918, SW2922.  Plaintiffs do not directly controvert this evidence.  They assert instead in their affidavits that they had "no choice" but to perform such activities off-the-clock because of pressure to complete as many service calls during the day as possible.  Chambers Affidavit, ¶ 19; Werchan Affidavit, ¶ 18.  This assertion of rules violations does not address the pending issue of whether Sears knew of their alleged off-the-clock work.

In any event, Plaintiffs' averments that various activities were "required" to be performed outside the workday is a bald conclusory assertion that does not create a genuine issue of fact that Sears in fact required such tasks in this fashion.  *See Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (to defeat a motion for summary judgment, the nonmoving party must present *specific facts* which show "the existence of a genuine issue concerning every essential component of its case."); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (a party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.)

[55]   It is not clear from the record whether refueling the service van, performing vehicle safety inspections, and tidying up the van, were occasionally to be performed off-the-
(continued...)

Sears had "knowledge, actual or constructive," that Plaintiffs were performing.  *See Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).  "Work not requested but suffered or permitted is work time."  29 C.F.R. § 785.15.

Turning first to the activities that both Plaintiffs claim they performed off-the-clock, Plaintiffs fail to cite to any direct evidence that Sears had actual or constructive knowledge that they were performing these tasks outside of the working day.  Instead, Plaintiffs argue circumstantially that Sears had constructive knowledge that they were working off-the-clock because the stated purpose of the HDP was to decrease the amount of time technicians spend on clerical and non-value added tasks and to maximize the number of service calls made per day.  Plaintiffs also argue that there were financial incentives in place for both technicians and their managers to make as many service calls as possible per day.

The Court is not persuaded.  The fact that Sears encouraged workers to be efficient does not constitute evidence of Sears' knowledge of Plaintiffs' performance of specific tasks or practices.  This is evidence, at best, of a motive for Sears' creation

---

55      (...continued)
        clock under the HDP.  In any event, these activities are clearly incidental to the commute under the ECFA and thus non-compensable.  *See* H.R. REP. NO. 104-585 at 5 ("routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable.").  These activities are also de minimis.  *Cf. Bobo*, 136 F.3d at 1468 (occasionally stopping to walk dog is de minimis).

of the HDP.  The motive simply does not raise a genuine issue of material fact that Sears had actual or constructive knowledge that Plaintiffs in fact were performing work outside the workday.

Similarly, Chambers' averment that he was reprimanded for not completing enough service calls per day does not suffice to raise a fact issue that his supervisors had actual or constructive knowledge that his solution to this issue was to work off-the-clock.[56]

Plaintiff Werchan has produced some evidence he claims shows that Sears knew that, prior to the start of the workday, he placed phone calls to the first customer of the day.  Specifically, Werchan points to a document he claims Sears provided to him stating "Technician needs to 'Call Ahead.'  If customer is not at home, the technician needs to run the call."[57]  This instruction does not establish that Werchan or any technician was instructed to call the first customer of the day prior to arriving at the customer's address.  However, Werchan also testified that he informed his manager that he was calling the first customer of the day either before or during his drive.[58]  The Court deems Werchan to have raised a genuine issue of material fact that Sears was aware that he made these phone calls off-the-clock.

---

[56]    *See* Chambers Affidavit, ¶ 20.

[57]    Werchan Affidavit II, at 3.

[58]    Werchan Deposition, at 43-44.

The Court nevertheless concludes that any "call ahead" phone calls are not compensable under the FLSA.  First, calling the first customer of the day to confirm an appointment is arguably incidental to the commute under the ECFA.  This task is analogous to an employee communicating with an employer to receive the assignment in the first place, *i.e.*, the call confirms the employee's travel directly from home to the customer's location.  Alternatively, to the extent that this activity is not incidental to the commute and instead is integral and indispensable to a principal work activity of a technician, the time required for these calls is de minimis.  There is no evidence that making a phone call each day to confirm an appointment would take more than a minute or so, if that.  It would be difficult to record this time under any circumstances, but particularly where Werchan apparently often performed this task during his commute.  This daily call is a non-compensable event.  *See Bobo*, 136 F.3d at 1468 (holding that monitoring a radio and occasionally stopping to walk law enforcement dog were de minimis activities and did not make the commute compensable).

Plaintiffs have failed to raise a genuine issue of material fact that any of their claimed off-the-clock activities are compensable under the FLSA.

### 4.    Plaintiffs' Other Theories of Relief Under FLSA

Plaintiffs also argue that even if the morning and evening commutes as well as other off-the-clock activities are non-compensable under the ECFA, they may nevertheless be compensable based on "custom or practice" at the employer's establishment, the "continuous workday rule," or as "wait time" or "on-call" time. The Court addresses each contention in turn.

### a.    Custom or Practice

Plaintiffs argue that their commutes and other off-the-clock activities under the HDP are compensable because of "custom or practice" in effect at the employer's establishment.  Subsection (b) of the Portal-to-Portal Act provides that even if an activity would be exempted from compensability under subsection (a), an employer will still be liable for the activity if it is compensable because of

> a custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed, covering such activity, not inconsistent with a written or nonwritten contract, in effect at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer.

29 U.S.C. § 254(b)(2).  Plaintiffs argue that prior to the implementation of the HDP in 2001, Sears compensated technicians for their morning and evening commutes as well as certain activities performed prior to and after the service run.[59]  Accordingly, they contend, these activities are still compensable as a custom or practice.

---

[59]    Chambers Response, at 25-26.  Sears disputes this characterization.

Plaintiffs' custom or practice contention is unavailing.  The custom or practice to which the statute refers must be in effect at the time of the activity for which the plaintiff employee seeks compensation.  *Id.* § 254(b)(2); 29 C.F.R. § 790.11 ("the compensability of [an activity alleged to be compensable by custom or practice], and its inclusion in computation of hours worked, is not determinable by a custom or practice which had been terminated before the activity was engaged in . . .").  The undisputed evidence shows that the HDP was implemented in 2001, and that approximately 90 percent of technicians have participated.  It is also undisputed that, under the HDP, Sears has not compensated its technicians for their morning or evening commutes or for the other activities noted by Plaintiffs.  Indeed, this is the very essence of Plaintiffs' claims.  It is apparent also that Sears, after commencement of the HDP program, has not compensated non-HDP technicians for their commutes from home to the Sears' office or van locations, or vice versa.  Thus, even assuming that Plaintiffs correctly characterize Sears' pre-HDP practices, it is clear that there was no custom or practice of compensating the technicians for the disputed activities, "in effect, at the time of [the allegedly compensable] activity."  29 U.S.C. § 254(b)(2); 29 C.F.R. § 790.11.  The regulations "permit recognition of changes in customs, practices and agreements which reflect changes in labor-management relations or policies." 29 C.F.R. § 790.11.  Plaintiffs have failed to raise a genuine issue of material fact that

Sears' custom or practice makes their commutes and other complained of pre- and post-commute activities compensable.

### b.    Continuous Workday Rule

Under the "continuous workday rule," the "'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Alvarez*, 546 U.S. at 29 (citing 29 C.F.R. § 790.6(b)).  Thus, the Supreme Court has held, for example, that "any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [the Portal-to-Portal Act's exemption of walking time], and as a result, is covered by the FLSA." *Id.* at 37.

Plaintiffs contend that under the HDP, a technician's first activity of the day is to log into the SST in the morning, and the last principal activity of the day is plugging the SST into a phone line and electrical outlet at home after returning from the last customer call.[60]  Plaintiffs contend therefore that their commutes are compensable under the continuous workday rule.  Plaintiffs rely on the District of Massachusetts decision in *Dooley v. Liberty Mutual Insurance Co.*, 307 F.Supp.2d 234, 242-243 (D. Mass. 2004).  In *Dooley*, the District of Massachusetts held that,

---

[60]    Chambers Response, at 29.

under the continuous workday rule, home-based appraisers' commutes to and from the first and last customer calls of the day were compensable if the appraisers performed principal activities, such as checking email and voice mail, preparing their computers for use, and returning telephone calls, before leaving home for the first assignment of the day and after returning home from the last assignment respectively. *Id.* Because the Court has concluded that Sears' technicians' pre-commute morning activities and post-commute evening activities under the HDP are non-compensable as incidental to the commute and/or de minimis, *Dooley* is inapposite.

The Court rejects also Plaintiffs' subsidiary point that when technicians spend compensable time troubleshooting the SST in the morning, this activity commences the workday and transforms the commute to the first service call into compensable time.[61] Significantly, the implementing regulations for the FLSA establish that the continuous workday rule is not absolute. Section 785.15 of Title 29 of the Code of Federal Regulations provides that "periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."[62] While the HDP requires

---

[61]     *See id.*, at 28 n.5.

[62]     29 C.F.R. § 785.16(a) provides in its entirety that:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his
>
> (continued...)

that employees spend time troubleshooting the SST under certain circumstances, Plaintiffs have adduced no evidence that technicians are required to perform this activity at a particular time.  Rather, there is only a requirement that technicians try to arrive at the first service call by 8:00 a.m., at which time the technician is to "clock in" on the SST.  The combined facts that a technician may choose when to troubleshoot the SST (if troubleshooting is necessary at all), and the technician is "completely relieved from duty" after completing troubleshooting activities so he may use this time for his own purposes, makes the continuous workday rule inapplicable. *See* 29 C.F.R. § 785.16(a); *Rutti*, 596 F.3d at 1060-61.

The Court's conclusion is consistent with the recent opinion of the Ninth Circuit in *Rutti*.  *See* 596 F.3d at 1060-61.  As mentioned, the Ninth Circuit held in that case that a home-based technician's commutes in a company car to and from his first and last service calls of the day were not compensable.  The *Rutti* court held, however, that a fact question existed as to the compensability of one of the technician's post evening-commute activities—completing a transmission from a

---

62      (...continued)
                own purposes are not hours worked. He is not completely relieved from
                duty and cannot use the time effectively for his own purposes unless he
                is definitely told in advance that he may leave the job and that he will
                not have to commence work until a definitely specified hour has
                arrived. Whether the time is long enough to enable him to use the time
                effectively for his own purposes depends upon all of the facts and
                circumstances of the case.

handheld computer.  *Id.* at 1058-59.  However, the court held that this activity, even if compensable, would not extend the workday to encompass the technician's commute home.  *Id.* at 1060-61.  Noting that the technician at issue was merely required to send the transmission at some point between 7:00 p.m. and 7:00 a.m., and that he was "completely relieved from duty the moment he completed his last service stop of the day," the court held that the technician was effectively able to use the time after his last stop for his own purposes and the continuous workday rule thus did not extend the workday to include the commute home.  *Id.*[63]  The same holds true in the case at bar.[64]

Plaintiffs' continuous workday argument fails for another reason: Neither Plaintiff has cited to any evidence of specific instances of Sears failing to compensate them for commuting and performing other off-the-clock activities after

---

[63]   The Court notes that the facts in *Dooley*, a District of Massachusetts court's decision that is not authority binding on this court, are distinguishable from the case at bar. The *Dooley* court found that the appraisers before it engaged in numerous principal activities at home that resulted in "the first and last trip of the day. . . not [being] a commute in the ordinary sense of the word—it is a trip between their office, where administrative work is performed, and an off-site work location." *Dooley*, 307 F.Supp.2d at 245.  Here, the technicians' homes are not like offices.  As set forth above, the only compensable activity performed there is the occasional troubleshooting of the SST.

[64]   A 1999 DOL Opinion Letter is consistent with this interpretation:  "Communication between the employee and the employer at home or in a hotel with respect to assignments, instructions, work progress or completion would not, *per se*, affect the compensability of travel time."  U.S. Dep't Lab. Op. Ltr. (Jan. 29, 1999), at *4-*5.

troubleshooting the SST. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) ("conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's summary judgment burden).

Plaintiffs accordingly have failed to raise a genuine issue of material fact that their morning and evening commutes and other off-the-clock activities under the HDP are rendered compensable because of the continuous workday doctrine.

### c.      Wait Time and On-Call Time

Plaintiffs here contend that even if the actual commute times to and from the first and last service calls of the day are not compensable, they must nonetheless be paid for time traveling in the company van because it is compensable as "wait time" or "on-call time." "Any work which an employee is required to perform while traveling must, of course, be counted as hours worked." 29 C.F.R. § 785.41. "Whether waiting time is time worked under the [FLSA] depends upon particular circumstances." *Id.* § 785.14.  "Facts may show that the employee was engaged to wait or they may show that he waited to be engaged." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944)).  An employee is engaged to wait, and thus must be compensated, when he is unable to use waiting time "effectively for his own purposes," and the time "belongs to and is controlled by the employer." *Id.* § 785.15; *see also Vega*, 36 F.3d at 425 ("waiting time is compensable if the wait predominantly

benefits the employer") (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir. 1990)).       Plaintiffs contend that technicians are "engaged to wait" during their morning and evening commutes under the HDP because they cannot use that time effectively for their own purposes.  They argue that this time belongs to and is controlled by Sears.  In support of this argument, Plaintiffs rehash their complaints regarding the conditions placed on employees' use of the company's vans discussed above.

This argument is rejected.  "Wait time is compensable when it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity."  *Vega*, 36 F.3d at 425 (citing 29 U.S.C. § 254).  As noted, notwithstanding Sears' restrictions on employees' use of the vans, commutes of up to thirty-five minutes under the HDP fit within the ECFA's exclusion for an employee's commute in a company vehicle and the exclusion for activities incidental to use of that vehicle for the commute.  Accordingly, these commute periods are not principal activities and are thus not compensable as "wait time" under FLSA.  *See id.*

Plaintiffs' argument that the commutes are compensable because of regulations pertaining to "on-call time" also fails.  "An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17.

Plaintiffs again argue that technicians cannot use their commute time effectively for their own purposes because of the restrictions placed on the use of the company vans. As stated above, this argument fails because the morning and evening commutes under the HDP comply with the ECFA and are thus non-compensable. Moreover, Plaintiffs cite no evidence that the technicians are, in fact, on-call for work for Sears during the employees' commute times. The evidence of record establishes that technicians were instructed to proceed directly from home to the first service stop in the morning, and to proceed directly home after the last stop in the evening, not to perform other duties for Sears. Plaintiffs have failed to raise a genuine issue of material fact that their morning and evening commutes were compensable as wait time or on-call time.

In sum, Plaintiffs have failed to raise a genuine issue of material fact that their morning and evening commutes and other off-the-clock activities are compensable under the FLSA. Sears is therefore entitled to summary judgment on Plaintiffs' FLSA claims.

**B.      Plaintiff Chambers' State Law Claims**

Plaintiff Chambers also claims that his morning and evening commutes and other off-the-clock activities are compensable under the Texas Minimum Wage Act ("TMWA"), which requires that employers pay employees the federal minimum wage.

*See* TEX. LAB. CODE § 62.051.  Chambers couples this claim with a prayer for relief

under the Texas Payday Law for payment of wages due.  *Id.* § 61.011.[65]  The Texas

Payday Law was enacted to require "certain types of employers to promptly and

regularly pay employees the full amount of wages due." *Igal v. Brightstar Info. Tech.*,

*Inc.*, 250 S.W.3d 78, 82 (Tex. 2008).[66]

The TMWA expressly provides that its provisions "do not apply to a person

covered by the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 *et seq.*)."

TEX. LAB. CODE § 62.151.[67]  From this premise, Chambers argues that if the Court

finds that the disputed activities in this case "are not covered by the FLSA," then the

TMWA must apply in its stead.[68]

---

[65]    The Texas Payday Law, TEXAS LABOR CODE § 61.011, provides in pertinent part:

> (a)    An employer shall pay wages to each employee who is exempt from the overtime pay provisions of the Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.) at least once a month.

> (b)    An employer shall pay wages to an employee other than an employee covered by Subsection (a) at least twice a month.

[66]    Chambers did not plead a claim under the TMWA *per se*.  Sears argues that this claim is thus foreclosed, as the Texas Payday Law itself does not provide a right to wages, but merely regulates the paying of wages owed.  Because the Court reaches the merits of Chambers TMWA contention, it need not resolve the pleading dispute.

[67]    Similarly, the Texas Payday Law applies only to employees who are "exempt from the overtime pay provisions of the [FLSA]." TX. LAB. CODE § 61.011(a).

[68]    Chambers Response, at 34.

Chambers' contention is rejected.   There is no dispute that Chambers' employment with Sears is covered by the FLSA.   The Court does not hold that Chambers' *employment* was *not covered* by the FLSA.   Rather, the Court holds that the *activities* in question are *not compensable* under that statute.   If Chambers' interpretation of the TMWA was correct, an absurd result would occur:  A plaintiff would automatically be entitled to compensation under the TMWA for any activity that is not compensable under the FLSA.   The TMWA does not apply to Chambers' employment with Sears, and Sears is entitled to summary judgment on that  claim.

To the extent the Texas Payday Law claim is severable under Chambers' theory, Chambers has not raised a genuine issue of material fact that Sears owed him any wages.   The Texas Payday Law claim therefore also fails.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court holds that Plaintiffs have failed to raise a genuine issue of material fact that the disputed activities in this case are compensable under the FLSA.   Plaintiff Chambers also has failed to raise a genuine issue of material fact that Sears failed to pay him wages owed under the TMWA or the Texas Payday Law.   It is therefore

**ORDERED** that Sears' Motions for Summary Judgment against Plaintiffs [Docs. # 41, # 43] are **GRANTED**.   It is further

**ORDERED** that Plaintiff Chambers' Motion for Class Certification and Expedited Discovery [Doc. # 40] is **DENIED AS MOOT**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **30**[th] day of **April, 2010.**

_____
Nancy F. Atlas
United States District Judge